### STATE OF CONNECTICUT *v.* PAOLINO SANSEVERINO*
(SC 17786)
(SC 17787)

Rogers, C. J., and Norcott, Katz, Palmer and Zarella, Js.

---

* Following reconsideration en banc by this court, this opinion has been superseded in part. See *State* v. *Sanseverino*, 291 Conn. 574, 577 n.2, 969 A.2d 710 (2009).

Argued October 16, 2007—officially released July 1, 2008

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Paul Rotiroti*, assistant state's attorney, for the appellant in Docket No. 17786, appellee in Docket No. 17787 (state).

*Jon L. Schoenhorn*, for the appellant in Docket No. 17787, appellee in Docket No. 17786 (defendant).

*Opinion*

KATZ, J. In these certified appeals involving criminal offenses against two victims, the defendant, Paolino Sanseverino, and the state both appeal from the judgment of the Appellate Court, which reversed the judgment of conviction, rendered after a jury trial, of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A)[1] and sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1)[2] for acts committed against the victim G,[3] and of

[1] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person . . . which reasonably causes such person to fear physical injury to such person or a third person . . . ."

We note that § 53a-70 (a) was amended in 2000, however, the changes made are not relevant to this appeal. See Public Acts 2000, No. 00-161, § 1. For purposes of convenience, we refer to the current revision of the statute.

[3] In accordance with the policy of protecting the privacy interests of victims of sexual abuse, we do not identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

sexual assault in the first degree in violation of § 53a-70 (a) (1) and attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2)[4] and 53a-70 (a) (1) for acts committed against another victim, C. *State* v. *Sanseverino*, 98 Conn. App. 198, 205–13, 907 A.2d 1248 (2006). The Appellate Court concluded that the trial court improperly had denied the defendant's motion to sever the cases relating to the two victims in violation of the defendant's due process right to a fair trial, but it rejected the defendant's claim that the first degree kidnapping statute, § 53a-92 (a) (2) (A), was unconstitutionally vague as applied to the facts of his case. In his certified appeal, the defendant claims that the Appellate Court improperly determined that § 53a-92 (a) (2) (A) was not void for vagueness as applied to the facts of his case because he was not on notice that the minimal restraint that was incidental to the underlying conduct was criminalized under the statute. In its certified appeal, the state claims that the Appellate Court improperly reversed the judgment of the trial court and remanded the case for separate trials because evidence of both assaults would have been cross admissible, and, therefore, the defendant had suffered no substantial prejudice because of the denial of severance. The defendant claims, as an alternate ground to affirm the Appellate Court's judgment, that the trial court committed harmful error in admitting evidence as to specific incidents of sexual abuse by the defendant during his prior marriage. We conclude that this court's decision today in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), compels the conclusion that the defendant's conviction of kidnapping in the

---

[4] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

first degree cannot stand. We also conclude that severance of the offenses for separate trials relating to the two victims was not required in this case, and we reject the defendant's alternate ground for affirmance of the Appellate Court's judgment. Accordingly, we reverse the Appellate Court's judgment as to the severance issue, and we reverse the defendant's conviction of kidnapping in the first degree.

The Appellate Court's opinion sets forth the following facts that the jury reasonably could have found. "In June or July, 1998, the defendant, the owner of Uncle's Bakery in Newington, hired C to work in the bakery. . . . One day, toward the end of her shift, while she was alone with the defendant, the defendant asked C to take a box into the back room. The defendant followed C into the back room, grabbed her by her shoulders and pushed her against a wall and a metal shelving unit. She could not move because the defendant had one arm and his upper body pressed against her. The defendant pulled her shirt out of her pants, put his hand under her shirt and touched her breasts. She tried to push him away and told him three or four times to stop, but he told her that 'he could do whatever he wanted to [her] because he had friends in the Newington police department, and it would be [her] word against his. Nobody would believe [her].' He then unbuttoned her jeans, pulled them down and digitally penetrated her vagina. He unbuttoned his pants and pulled out his penis. He turned C around and held her down by the back of the neck, pinning her with her head between the shelving unit and the wall. He tried to insert his penis into her vagina, but because she kept moving around, he did not successfully penetrate her, although she did feel the pressure of him trying to insert himself.

"At that point, the buzzer rang at the front door, indicating that a customer had entered the store. The defendant turned C around, put his hand over her

mouth, pushed her against the wall and told her to stay there and to be quiet. When the defendant left to assist the customer, C ran out of the bakery and went home. She never returned to the bakery. At home, C went into the bathroom, took off her clothes and showered. She later burned her clothing. She testified that her initial intention was to call the police but that when she got home, her boyfriend had three other people with him, and she did not want them to know, so she did not tell anyone or call the police at that time. She did not tell anyone what had happened to her until 'a couple of months later.' C testified that after what happened, she was angry always, and if she was not working, she was sleeping. She said that she would not talk to anybody or let anybody touch her, and she would not let anybody be around her. Her boyfriend's mother, with whom C was residing, eventually asked her about her behavior and mood, and C 'finally broke down and told her what had happened at the bakery.'

"On November 8, 1998, C contacted Peter Lavery, an officer with the Newington police department, to report that she had been sexually assaulted sometime in June or July, 1998, by the defendant at Uncle's Bakery. She gave a sworn statement of what had occurred. Later that same day, she contacted Lavery and said that she did not want to press charges against the defendant and did not want to go through any further investigation of the case because it would be too stressful for her to go to court and go through the court proceedings. In August, 1999, however, after being informed that a second rape victim, G, had come forward, C agreed to reinstate her case against the defendant. C and G did not know each other.

"In the fall of 1998, G became a regular customer at Uncle's Bakery. In the spring of 1999, she approached the defendant about working at the bakery and was hired to work from 5 a.m. to 7:30 a.m. In May, 1999, as

G started her shift at 5 a.m., she went into the back room of the bakery to get her apron. The defendant followed her in and grabbed her. She told him to 'get away and stop,' to which the defendant replied, '[you] know you want it, so stop.' The defendant grabbed G's arms, pushed her against the wall, pinned her arms over her head with his arm, and pressed his body against hers so she could not move. She twice yelled at him to stop, but he did not. She testified that she became afraid and that she froze. While still keeping her pinned [with one hand], he pulled her pants down, then pulled his pants down. He inserted his penis inside her vagina and then, prior to climaxing, pulled out and ejaculated on the floor. The defendant let G go, and she went into the bathroom, locked herself in and did not come out again until she heard another person enter the bakery. G then came out of the bathroom, waited until her shift was over and went home. She threw away her clothes. She did not talk to anybody about what had happened because, she testified, she felt ashamed, dirty, cheap and scared because the defendant had threatened her. She testified that he had told her [on numerous occasions] that 'he was with the family, the mob, and that if [she] ever said anything . . . he would take care of [her] and [her] family.' G continued to work at the bakery for about one week because she was afraid of the defendant. After one week, she . . . quit because she 'could [not] stand to see [the defendant] anymore.' At some point, G told her former husband and her sister what had happened. She was advised not to say or do anything 'because it would cause a scandal' and because her sister and her sister's husband 'were in the process of buying the business from the defendant.' She testified that if she had said anything, 'they might have lost the business.' In July, 1999, however, G reported the sexual assault when she found out that the defendant was 'smearing [her] name, saying that [she] was doing sexual favors for other men.' This made her angry and determined that 'he's not going to get away with this.' . . .

The defendant subsequently was charged in connection with both incidents." *State* v. *Sanseverino*, supra, 98 Conn. App. 200–203.

The record reveals the following additional undisputed facts and procedural history. The state separately had charged the defendant with kidnapping in the first degree with respect to C and G. Prior to trial, upon agreement of the state, the trial court dismissed the charge of kidnapping in the first degree as to C, which the defendant claimed had been brought beyond the statute of limitations.[5] The trial court denied the defendant's motion to have the charges relating to C and G tried separately pursuant to Practice Book § 41-18.[6] At the close of the state's case-in-chief, the defendant moved for a judgment of acquittal, which the trial court also denied. During the presentation of his case, the defendant claimed that he had dated both C and G for a period of time and that any sex with the victims was consensual.[7] The jury subsequently returned a verdict

[5] The defendant originally was charged with unlawful restraint in the first degree as to C. On or about April 5, 2004, the state filed a substitute long form information charging the defendant with kidnapping in the first degree as to C. The defendant filed a motion to dismiss the kidnapping count on the ground that the kidnapping charge "broaden[ed] or substantially amend[ed] the charge of [u]nlawful [r]estraint in the [f]irst [d]egree made ·in the first information, such that the defendant has been called upon to address factual allegations by the [s]tate beyond those already charged in the first information" and, therefore, was a new charge brought beyond the five year statute of limitations. In response to the defendant's motion, the state withdrew the kidnapping charge prior to trial and, on or about April 21, 2004, the state filed another substitute long form information charging the defendant with sexual assault in the first degree and attempt to commit sexual assault in the first degree as to C; and kidnapping in the first degree and sexual assault in the first degree as to G.

[6] Practice Book § 41-18 provides: "If it appears that a defendant is prejudiced by a joinder of offenses, the judicial authority may, upon its own motion or the motion of the defendant, order separate trials of the counts or provide whatever other relief justice may require."

[7] In this respect, we note the following points. The defendant asserted at trial that he had dated C, but that she ultimately was fired for giving away pastries and for stealing money. The defendant adduced testimony from one of his employees that C had returned to the bakery on occasion after

of guilty on all four counts of the substitute information: sexual assault in the first degree and attempt to commit sexual assault in the first degree as to C, and kidnapping in the first degree and sexual assault in the first degree as to G. The trial court sentenced the defendant to a total term of forty years imprisonment. The defendant appealed from the judgment of conviction to the Appellate Court.

The Appellate Court determined that the trial court improperly had denied the defendant's motion to sever the charges relating to C and G, concluding that the defendant had been prejudiced substantially by the consolidation of the two cases, because—viewed through the lens of our holding in *State* v. *Ellis*, 270 Conn. 337, 377, 852 A.2d 676 (2004), that the crime of sexual assault is inherently violent in nature, regardless of whether there is physical violence—the two cases did not involve discrete and easily distinguishable factual scenarios. *State* v. *Sanseverino*, supra, 98 Conn. App. 205. That court further concluded that this prejudice had not been cured by the trial court's instructions to the jury. Id., 206–208. It therefore reversed the defendant's conviction and remanded the case for new separate trials. Id., 208. The Appellate Court rejected, however, the defendant's contention that the kidnapping statute was void for vagueness as applied to the facts of his case. Id., 213. The Appellate Court determined that the amount of restraint applied to G was "not minuscule" and that all that is required under the kidnapping statute is a "restriction of movement . . . with the intent to prevent the victim's liberation." Id.

the alleged assault to ask the defendant for bus fare. With respect to G, the defendant asserted that they had dated for a short period of time, and that she did not quit within one week after the alleged incident, but continued to work at the bakery until sometime later when the defendant sold the bakery to G's brother-in-law. The defendant also asserted that G and her brother-in-law had offered to drop the charges in exchange for money. G testified that her brother-in-law had approached her about taking money from the defendant to drop the charges, but that she had refused to do so.

We thereafter granted the defendant's petition for certification to appeal to this court on the following question: "Did the Appellate Court properly conclude that . . . § 53a-92 (a) (2) (A), kidnapping in the first degree, is not unconstitutionally vague as applied to the defendant's conduct?"; *State* v. *Sanseverino*, 280 Conn. 945, 946, 912 A.2d 481 (2006); and granted the state's petition for certification to appeal on the following issue: "Whether the Appellate Court properly held that the trial court improperly denied the defendant's motion to sever the two cases charged against him?" *State* v. *Sanseverino*, 280 Conn. 946, 912 A.2d 481 (2006).

I

The defendant first claims that § 53a-92 (a) (2) (A) is unconstitutionally vague as applied to the facts of his case. Specifically, the defendant contends that, because the conduct at issue here predated our decision in *State* v. *Luurtsema*, 262 Conn. 179, 201–204, 811 A.2d 223 (2002),[8] in which we rejected an insufficiency of the evidence challenge on a materially similar set of facts and concluded that the kidnapping statute requires no minimum duration of restraint or distance of movement, he was not on notice that such a minuscule and incidental restraint would be criminalized by the statute, rendering it void for vagueness as applied to the facts of his case. Thus, as part of his vagueness claim,

---

[8] In *State* v. *Luurtsema*, supra, 262 Conn. 201–204, we rejected the defendant's claim that the evidence was insufficient to support a kidnapping conviction under § 53a-92 (a) (2) (A) because he only had moved the victim from the couch to the floor, where he had choked and attempted to sexually assault her. We concluded that the kidnapping statute does not impose time or distance requirements, and that "any argument that attempts to reject the propriety of a kidnapping charge on the basis of the fact that the underlying conduct was integral or incidental to the crime of sexual assault also must fail." (Internal quotation marks omitted.) Id., 202. We also noted that, because the defendant did not raise a void for vagueness challenge, we could "neither acknowledge nor reject the merits of such a constitutional claim." Id., 204.

the defendant contends that the kidnapping charge was "based upon a minuscule duration of confinement" and that "the restraint imposed was wholly incidental to the commission of the sexual assault." The defendant points to dictum in our case law relating to the availability of a void for vagueness claim based in part, according to the defendant, on the merger doctrine; see *State* v. *Jones*, 215 Conn. 173, 180, 575 A.2d 216 (1990);[9] which prohibits a kidnapping charge under circumstances wherein "the restraint was so much [a] part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility cannot fairly be attributed to them." (Internal quotation marks omitted.) *People* v. *Gonzalez*, 80 N.Y.2d 146, 152–53, 589 N.Y.S.2d 833, 603 N.E.2d 938 (1992). We conclude that our decision in *State* v. *Salamon*, supra, 287 Conn. 509, requires reversal of the defendant's kidnapping conviction.

Although the defendant broadly phrases his claim in constitutional terms, upon review of his specific contentions, it is clear that he is in effect addressing the same

[9] In *State* v. *Jones*, supra, 215 Conn. 180, although the court rejected the defendant's claims that § 53a-92 (a) (2) (A) was void for vagueness as applied and that there was insufficient evidence to support his kidnapping conviction, the court acknowledged that it could conceive of a successful void for vagueness challenge in a "factual situation in which charging a defendant with kidnapping based upon the most minuscule movement would result in an absurd and unconscionable result." (Internal quotation marks omitted.) In so doing, the court cited to *People* v. *Adams*, 389 Mich. 222, 232, 205 N.W.2d 415 (1973), representing a line of cases from other jurisdictions applying the "merger doctrine." *State* v. *Jones*, supra, 180. In *People* v. *Adams*, supra, 227–28, a prison inmate took a prison guard hostage at knifepoint and moved him from the cell block to the prison yard and ultimately to the prison hospital. He took several other hostages along the way. Id. The Michigan Supreme Court concluded—on the basis of a review of the development of case law from other jurisdictions—that the state's kidnapping statute required some asportation that was independent of an underlying lesser offense. Id., 230–38. The defendant contends that this court's citation to *Adams* in *Jones* represents an endorsement of the merger doctrine reasoning in the void for vagueness context pre-*Luurtsema*.

considerations with respect to the kidnapping statute— i.e., the incidental and necessary nature of the restraint to the underlying criminal offense[10]—that we recently reconsidered in *Salamon*. Therefore, because our case law advises us to eschew unnecessarily deciding a constitutional question; see, e.g., *Tarro* v. *Commissioner of Motor Vehicles*, 279 Conn. 280, 286, 901 A.2d 1186 (2006); *State* v. *McCahill*, 261 Conn. 492, 501, 811 A.2d 667 (2002); we resolve the defendant's claim that the confinement of G in the present case was merely incidental to and necessary for the sexual assault and, therefore, not separately chargeable under § 53a-92 (a) (2) (A) in accordance with the statutory principles adopted in *Salamon*.[11]

In *State* v. *Salamon*, supra, 287 Conn. 528–41, we reconsidered our long-standing interpretation of our kidnapping statutes, General Statutes §§ 53a-91 through 53a-94a. *Salamon* involved a female victim who had been assaulted by the defendant at a train station in Stamford late at night. Id., 515. The defendant had approached the victim from behind as she was ascending a flight of stairs, grabbed her by the back of the neck, causing her to fall, and held her down by her

[10] Although at oral argument before this court, the defendant stated that he was not asking us to reconsider our position on the merger doctrine, we note that under either the merger doctrine or the void for vagueness framework we are required to consider the relationship between the sexual assault and the restraint and to determine whether, under the specific facts of the case, one was so incidental and necessary to the other that kidnapping may not lie as a separate offense. The defendant addresses this aspect in his void for vagueness claim, and the state has responded. For these reasons, we conclude it is appropriate to examine the defendant's contentions within the *Salamon* framework.

[11] We may apply the rule announced in *Salamon* to the present case because this court long has stated that a rule enunciated in a case presumptively applies retroactively to pending cases. *Marone* v. *Waterbury*, 244 Conn. 1, 10–11 and n.10, 707 A.2d 725 (1998) (citing cases). Because the present case was pending at the time we articulated a new construction of the kidnapping statutes in *Salamon*, that construction applies here.

hair. Id. When the victim began to scream, the defendant punched her in the mouth and attempted to insert his fingers into her throat. Id. After a few minutes, the victim freed herself, and the defendant fled. Id. The defendant ultimately was charged with kidnapping in the second degree in violation of General Statutes § 53a-94, unlawful restraint in the first degree, and risk of injury to a child. Id., 516. At trial, the defendant requested a jury instruction that, if the jury found that the restraint had been incidental to the assault, then the jury must acquit the defendant of the charge of kidnapping. Id. The trial court declined to give that instruction. Id.

In response to the defendant's claim on appeal to this court in *Salamon*, we reexamined our long-standing interpretation of the kidnapping statutes to encompass even restraints that merely were incidental to and necessary for the commission of another substantive offense, such as robbery or sexual assault. Id., 522–28. We concluded that neither considerations related to the doctrine of stare decisis nor legislative acquiescence as to our prior, literal interpretation justified adherence to that interpretation; id., 520–22; particularly when it was bound, in some instances, to produce "unconscionable, anomalous, or bizarre results." Id., 524. Moreover, we noted that, since 1977, when this court first had interpreted the kidnapping statutes, courts of many other states had adopted a contrary interpretation, barring convictions on the basis of incidental restraint or movement. Id., 526–27. Thus, in *Salamon*, we engaged, for the first time, in a more searching inquiry as to whether the kidnapping statutes "warrant[ed] the broad construction that we had given them." Id., 524.

Our case law dating back to 1977 had concluded that the kidnapping statutes required only an element of intent, and not any time or distance elements. Id., 531–32. In this regard, the hallmark of a kidnapping is an

"abduction,"[12] which requires "restraint,"[13] the latter also being an element of the lesser crime of unlawful restraint. Id., 530. Each of these terms, which are statutorily defined, requires a separate intent element. The differing intents required for abduction and restraint presented us with an ambiguity not previously explored under our case law. Id., 534. In other words, we had not "explored the parameters of that intent, in particular, how the intent to prevent [a victim's] liberation . . . that is, the intent necessary to establish an abduction, differs from the intent to interfere substantially with [a victim's] liberty . . . necessary to establish a restraint. Certainly, when an individual intends to interfere substantially with another person's liberty, he also intends to keep that person from escaping . . . [but] the point at which an intended interference with liberty crosses the line to become an intended prevention of liberation is not entirely clear." (Citations omitted; internal quotation marks omitted.) Id. We concluded in *Salamon* that this "point" is significant because, "[a]t least in a case not involving the secreting of a victim in a place he or she is unlikely to be found," it is the intent that separates an abduction, and thus a kidnapping, from a mere unlawful restraint, which imposes "relatively minor penalties . . . ." Id.

To resolve this ambiguity, we examined the "common law of kidnapping, the history and circumstances surrounding the promulgation of our current kidnapping

---

[12] "Abduct" is defined under General Statutes § 53a-91 (2) as "to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation."

[13] "Restrain" is defined under General Statutes § 53a-91 (1) as "to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . ."

statutes and the policy objectives animating those statutes, [and] we conclude[d] the following: Our legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim." Id., 542. Although we reaffirmed our long-standing rule that no minimum period of restraint or degree of movement is necessary,[14] "[t]he guiding principle is whether the [confinement or movement] was so much the part of another substantive crime that the substantive crime could not have been committed without such acts . . . ." (Internal quotation marks omitted.) Id., 546.

"Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury. For purposes of making that determination, the jury should be instructed to consider the various

---

[14] In *State* v. *Salamon*, supra, 287 Conn. 532 n.21, we also had noted that "[a] challenge to a kidnapping conviction predicated on such miniscule movement or duration of confinement remains viable on constitutional grounds under the void for vagueness doctrine." See also id., 527–28 n.17. Although we recognize that a minuscule degree of restraint and its incidentalness to the more substantive offense often will go hand in hand, we emphasize that our more recent decisions do not foreclose the success of a void for vagueness challenge in a situation wherein the restraint is independent of the substantive offense but still so minuscule that the application of the kidnapping statute would produce absurd and unconscionable results.

relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." Id., 547–48. Applying this standard to the facts in *Salamon*, we concluded that, although the defendant had not been charged with assault, the judgment of conviction of kidnapping in the second degree had to be reversed and the case remanded for a new trial because the defendant was entitled to a jury instruction explaining that a kidnapping conviction could not lie if the restraint was merely incidental to the assault.[15] Id., 550.

Applying our holding in *Salamon* to our review of the Appellate Court's determination regarding the trial court's denial of the defendant's motion for a judgment of acquittal in the present case, we conclude that, although the question of whether kidnapping may stand as a separate offense is one for the jury; id.; under the facts of the present case, no reasonable jury could have found the defendant guilty of kidnapping in the first degree on the basis of the evidence that the state proffered at trial. "The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a

---

[15] The dissent suggests that our holding in the present case, and in *Salamon*, merely have replaced the issues created by our previous interpretation of the kidnapping statute with a host of new ones. For all of the reasons set forth in *Salamon*, we believe that our interpretation of the kidnapping statute is sound. Additionally, although we recognize that other issues may arise as a result of the decisions in *Salamon* and the present case, we leave those issues for another day when they are appropriately before us.

criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 246, 856 A.2d 917 (2004).

In the present case, the evidence clearly establishes that the defendant restrained G solely for the purpose of sexually assaulting her. Although we have carefully scrutinized the record, transcript, exhibits and briefs, we have found no evidence that the defendant restrained G to any greater degree than that *necessary* to commit the sexual assault. G walked into the back room of the bakery to get an apron. The restraint occurred thereafter when the defendant grabbed G from behind and pushed her against the wall, pinning her arms over her head with his arm and pressing his body against hers to keep her from moving. These actions were clearly undertaken solely for the purpose of allowing the defendant to initiate, and to keep G from moving away from, his sexual advances. None of the restraint that the defendant applied to G was for the purpose of preventing her from summoning assistance nor did it significantly increase the risk of harm to G outside of that created by the assault itself. The defendant released G immediately after he had ejaculated. For these reasons, we conclude that no reasonable jury could have convicted the defendant of a kidnapping in light of our holding in *Salamon*.[16] Cf. *State* v. *Salamon*,

---

[16] Contrary to the dissent's assertion that the state "*could have proffered*" additional evidence in the present case to support the kidnapping charges had it had knowledge of the rule announced in *Salamon*, we have found nothing in the record to indicate that there was any such evidence. (Emphasis in original.) In the absence of any such evidence, it strains the imagination to conceive of a situation in which the state would decline to proffer relevant and material evidence in a criminal prosecution wherein it bears the burden

supra, 287 Conn. 549 (concluding, in direct contrast to facts of present case, that defendant was not entitled to judgment of acquittal because reasonable jury could have concluded that defendant "pulled the victim to the ground *primarily* for the purpose of restraining her, and that he struck her and put his fingers in her mouth in an effort to subdue her and to prevent her from screaming for help so that she could not escape" [emphasis added]). Accordingly, the defendant's kidnapping conviction cannot stand.

## II

We next turn to the issue raised in the state's certified appeal. The state submits, inter alia, that the Appellate Court improperly determined that the defendant had been prejudiced substantially by the trial court's denial of his motion to sever the charges concerning the two victims, C and G. The state specifically contends that the evidence in both cases would have been cross admissible at separate trials to show a common scheme or plan on the part of the defendant, and, therefore, the defendant could have suffered no substantial prejudice as a result of the consolidation. In the alternative, the state claims that the trial court properly consolidated the charges according to the considerations that this court set forth in *State* v. *Boscarino*, 204 Conn. 714, 722–25, 529 A.2d 1260 (1987). We agree with the state's first contention, and therefore, we need not consider whether the consolidation otherwise would have been proper under *Boscarino*.

of proving every element of the crimes charged beyond a reasonable doubt. See *State* v. *Perkins*, 271 Conn. 218, 235, 856 A.2d 917 (2004). We note that the state has not requested that we order the trial court to enter a judgment of conviction of unlawful restraint in the second degree; General Statutes § 53a-96; as a lesser included offense of kidnapping. Therefore, we currently express no opinion on whether the state might be entitled to such relief and we reserve judgment on whether to consider that issue should the state raise it in a postappeal motion.

The following additional procedural history is relevant to our resolution of this issue. Prior to trial, the defendant made a motion, pursuant to Practice Book § 41-18, to sever the charges against him and to order separate trials for the charges relating to each victim. The defendant argued that, because the crimes were so similar, he would be prejudiced by the consolidation because the jury could use evidence of guilt of a crime against one victim to convict him of another offense against the other victim. The trial court, applying *State* v. *Boscarino*, supra, 204 Conn. 722–25, concluded that: (1) the two incidents involved discrete, easily distinguishable factual scenarios; (2) the trial would not be unusually long or complex so as to confuse the jurors; (3) the crimes were not unusually brutal or shocking, above and beyond the typical sexual assault case; and (4) the evidence of misconduct in one case likely would be admissible to prove intent or a common scheme or plan in the other. Thus, the trial court concluded that the evidence was more probative than prejudicial and denied the defendant's motion to sever.

The Appellate Court concluded that consolidation of the offenses was improper because the factual scenarios as to each victim were so similar that consolidation "would impair the defendant's right to the jury's fair and independent consideration of the evidence in each case." (Internal quotation marks omitted.) *State* v. *Sanseverino*, supra, 98 Conn. App. 205–206. It further concluded that any prejudice caused by the consolidation of the cases was not cured by the trial court's jury instructions to consider each of the counts individually because the court did not instruct the jury that it could not consider the evidence of one victim's case in determining whether to convict the defendant on charges relating to the other victim. Id., 207–208.

General Statutes § 54-57[17] and Practice Book § 41-19[18] permit a trial court to join similar charges in pending cases against a common defendant. Our prior decisions have made clear that the trial court enjoys broad discretion in this respect and that its decision to consolidate will not be disturbed in the absence of manifest abuse of that discretion. *State* v. *McKenzie-Adams*, 281 Conn. 486, 519–20, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007). "[T]his court consistently has recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion . . . will not second guess the considered judgment of the trial court as to the joinder or severance of two or more charges." (Internal quotation marks omitted.) Id., 521. On appeal, "[t]he defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Internal quotation marks omitted.) Id., 520.

"Where evidence of one incident can be admitted at the trial of the other, separate trials would provide the defendant no significant benefit. It is clear that, under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial." *State* v. *Pollitt*, 205 Conn. 61, 68, 530 A.2d 155 (1987). We consistently have found joinder to be proper if we have concluded that the evidence of other crimes or uncharged misconduct would have been

---

[17] General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise."

[18] Practice Book § 41-19 provides: "The judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together."

cross admissible at separate trials. *State* v. *McKenzie-Adams*, supra, 281 Conn. 520 (citing cases); see also *State* v. *Atkinson*, 235 Conn. 748, 765, 670 A.2d 276 (1996) (concluding that consolidation was proper, in part, because evidence of escape offense would have been admissible at trial to prove consciousness of guilt of other factually unrelated offenses); *State* v. *Greene*, 209 Conn. 458, 464, 551 A.2d 1231 (1988) ("[t]he trial court properly joined the two cases for trial because, in the event of separate trials, evidence relating to each of the cases would have been admissible in the other"); *State* v. *Pollitt*, supra, 72. Even if the evidence was not cross admissible, however, we have affirmed the trial court's judgment permitting joinder, provided that the defendant was not substantially prejudiced. *State* v. *McKenzie-Adams*, supra, 520–21. To make that determination, we have examined: "(1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *Ellis*, supra, 270 Conn. 375.

Accordingly, we first must determine whether the trial court abused its discretion when it determined that the evidence of either assault would have been cross admissible at separate trials to prove a common plan or scheme. *State* v. *Jacobson*, 283 Conn. 618, 626, 930 A.2d 628 (2007). "As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . On the other hand,

evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible." (Internal quotation marks omitted.) *State* v. *McKenzie-Adams*, supra 281 Conn. 521–22; *State* v. *Morowitz*, 200 Conn. 440, 442, 512 A.2d 175 (1986) ("evidence of prior unconnected crimes . . . may be admissible . . . to prove knowledge, intent, motive, and common scheme or design" [citations omitted; internal quotation marks omitted]); see also Conn. Code Evid. § 4-5 (b).[19] Such evidence properly may be admitted if it is (1) "relevant and material to at least one of the circumstances encompassed by the exceptions," and (2) more probative than prejudicial. *State* v. *McKenzie-Adams*, supra, 522.

There are "two separate and distinct categories of cases in which we have applied the common scheme or plan exception. In the first category, which consists of what most accurately may be described as 'true' common scheme or plan cases, the nature of the charged and uncharged crimes combined with connecting evidence, if any, gives rise to a permissive inference that an overall scheme or plan existed in the defendant's mind, and that the crimes were executed in furtherance of that plan. In the second category of cases, which consists of what most accurately may be described as 'signature' cases, the charged and uncharged crimes

[19] Section 4-5 of the Connecticut Code of Evidence provides in relevant part: "(a) Evidence of other crimes, wrongs or acts inadmissible to prove character. Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person.

"(b) When evidence of other crimes, wrongs or acts is admissible. Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. . . ."

appear to be separate and discrete criminal acts, but the method of commission exhibits the existence of a 'modus operandi,' 'logo,' or 'signature,' which, when considered in combination with other factors, such as the proximity of time and place of commission, gives rise to a permissive inference that the crimes were executed in furtherance of an overall common scheme or plan." *State* v. *Randolph*, 284 Conn. 328, 343, 933 A.2d 1158 (2007).

Thus, to establish a common scheme, "[i]t is not enough that the two offenses are similar. . . . [Rather], the characteristics of the two offenses must be sufficiently distinctive and unique as to be like a signature." (Internal quotation marks omitted.) *State* v. *Morowitz*, supra, 200 Conn. 443. We repeatedly have applied, however, a more liberal approach to admitting evidence of misconduct to prove a common plan or scheme in sex crime cases than in other types of cases.[20] *State* v. *Randolph*, supra, 284 Conn. 340–42; *State* v. *McKenzie-Adams*, supra, 281 Conn. 522; *State* v. *Aaron L.*, 272 Conn. 798, 820–21, 865 A.2d 1135 (2005); *State* v. *Romero*, 269 Conn. 481, 497–98, 849 A.2d 760 (2004); *State* v. *Kulmac*, 230 Conn. 43, 62, 644 A.2d 887 (1994); *State* v. *Hauck*, 172 Conn. 140, 145, 374 A.2d 150 (1976). We generally have determined that such evidence is relevant to a common scheme or plan of sex crimes provided that three conditions are met: "[T]he prior offenses (1) are not too remote in time; (2) are similar to the offense charged; and (3) are committed upon persons similar to the prosecuting witness." (Internal quotation marks omitted.) *State* v. *Jacobson*, supra, 283

[20] "That rationale rests, in part at least, on the notion that, when human conduct involves sexual misconduct, people tend to act in generally consistent patterns of behavior, and that it is unlikely (although, of course, not impossible) that the same person will be falsely accused by a number of different victims." *State* v. *Sawyer*, 279 Conn. 331, 383, 904 A.2d 101 (2006) (*Borden, J.*, concurring and dissenting); see also *State* v. *Merriam*, 264 Conn. 617, 670–71, 835 A.2d 895 (2003).

Conn. 631; see also *State* v. *McKenzie-Adams,* supra, 522.

With regard to the first factor, we have acknowledged that "increased remoteness in time does reduce the probative value of prior misconduct evidence . . . [but], [e]ven a relatively long hiatus between . . . misconduct . . . is not, by itself, determinative of the admissibility of common plan or scheme evidence . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Jacobson,* supra, 283 Conn. 633. When there are "striking similarities" between the incidents at issue, we have found longer intervals to be acceptable. See *State* v. *Sawyer,* 279 Conn. 331, 350–51, 904 A.2d 101 (2006) (citing cases). In the present case, the period between occurrences—approximately one year—falls within the range of time we have accepted as "not too remote." See, e.g., *State* v. *Jacobson,* supra, 632–33 (six to ten years between incidents was not "insignificant" period of time but still not too remote); *State* v. *Romero,* supra, 269 Conn. 498–500 (nine years between incidents of sexual abuse not too remote); *State* v. *Kulmac,* supra, 230 Conn. 62 (seven years between incidents not too remote).

With regard to the second and third factors, in the present case, the events were not merely similar; rather, the type of victim and the method of attack were substantially identical in both cases. First, both C and G are women whom the defendant had hired to work in his bakery. Second, the place where the assault occurred (the bakery's back room), the method of restraint (pushing the victims up against an object and pinning them down), the method of sexual attack (vaginal intercourse or attempted vaginal intercourse), and the use of threats to dissuade the victim from reporting the assault (assertions of police or Mafia contacts) were all substantially the same in the cases of both victims. The similarities between the two attacks are, indeed,

so striking that we have little trouble concluding, particularly under our more liberal sex crime admissibility rules, that the attacks were relevant to prove a common plan or scheme on the part of the defendant to sexually assault his female employees. See *State* v. *Sawyer*, supra, 279 Conn. 344 ("[i]t is the distinctive combination of actions which forms the signature or modus operandi of the crime . . . and it is this criminal logo which justifies the inference that the individual who committed the first offense also committed the second" [internal quotation marks omitted]).

We next must determine whether the prejudicial effect of the evidence outweighed its probative value. In so doing, "every reasonable presumption should be given in favor of the trial court's ruling. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates *undue* prejudice so that it threatens an injustice were it to be admitted. . . . [Accordingly] [t]he test for determining whether evidence is unduly prejudicial is not whether it is damaging to the [party against whom the evidence is offered] but whether it will improperly arouse the emotions of the jur[ors]." (Emphasis in original; internal quotation marks omitted.) *State* v. *Jacobson*, supra, 283 Conn. 639.

Under these circumstances, it is difficult to imagine that G's testimony unduly aroused the emotions of jurors anymore than C's testimony and vice-versa—particularly given the strong similarities in the details of the incidents. Any trial at which a sexual assault victim has to relate intimate details of the assault is an emotional affair; we cannot conclude in the present case, without more, that evidence of such a common plan or scheme was unduly prejudicial.

The defendant contends that he was unduly prejudiced because, in consolidating the cases, the trial court

permitted the jury to hear and consider more details than were necessary to prove a common plan or scheme. Specifically, the defendant points to the admission of the evidence regarding the victims' hesitation in coming forward and their general emotional reaction to the assault. Although the details concerning the state of mind and conduct of both victims after the assault were not relevant to a common plan or scheme, we disagree that the details of what happened to the victims after their assaults—such as, C's emotional state—subjected the defendant to any undue prejudice. We cannot find, and the defendant has not directed us to, anything shocking or unusual about the victims' emotional or psychological reactions to the assaults that would have so inflamed the passions and prejudices of the jury that separate trials would have afforded the defendant any substantial benefit. For the foregoing reasons, we conclude that the trial court did not abuse its discretion in determining that the evidence of each assault would have been cross admissible to prove a common plan or scheme. Thus, separate trials would have afforded the defendant no substantial benefit. Accordingly, the Appellate Court improperly concluded that the defendant was entitled to new trials.

## III

Pursuant to the Practice Book § 84-11 (a),[21] the defendant offers an alternate ground to affirm the Appellate Court's judgment reversing his convictions: the trial court's decision to permit his former wife to testify as a rebuttal character witness constituted harmful error. We are not persuaded.

---

[21] Practice Book § 84-11 (a) provides in relevant part: "Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court. . . ." The defendant did raise and brief his alternate ground for affirmance before the Appellate Court, but the court did not reach the issue in rendering its decision.

The following additional procedural history is relevant to our consideration of this issue. At trial, the defendant called various friends and acquaintances to testify that he was a person of good character and that he was not the kind of person who would commit a crime like sexual assault.[22] At the close of the defendant's case, the state sought to call Robin Sanseverino, the defendant's former wife, to testify to incidents of sexual assault against her by the defendant during their thirteen year marriage. The defendant objected to this evidence on the basis that: (1) he was not given sufficient time to prepare to rebut it; and (2) the testimony itself would be more prejudicial than probative. The state contended that this testimony was admissible as rebuttal evidence of the character traits that the defendant had opened the door to during his presentation of evidence. The trial court agreed with the state and permitted Robin Sanseverino to testify as a rebuttal witness.

Thereafter, she testified that she had been sexually abused by the defendant on nearly a daily basis during their marriage. She testified as to specific incidents of this sexual abuse, such as when the defendant had forced her to have sex with him while she was sick with influenza, during which assault the victim swallowed her own vomit. She also testified as to prior incidents of domestic abuse that were nonsexual, such

[22] Specifically, Barbara Pleasent, the defendant's friend, employer and former girlfriend, testified that the defendant had a reputation in the community for truthfulness and that she believed he never would force himself on anyone sexually. Grace Cillo, a friend who had helped out in the defendant's bakery, and her husband, Geraldo Cillo, also a close friend of the defendant, testified that they believed that the defendant had a reputation in the community for truthfulness and that he never would force himself on anyone. Both of the Cillos testified, however, that they might change their opinion of the defendant if they knew that he had sexually assaulted someone. Finally, the defendant's current girlfriend, Elizabeth Solak, testified that she did not believe that the defendant would sexually assault anyone.

as when the defendant threw a child's high chair at her for not having dinner ready on time. In surrebuttal of this evidence, the defendant called members of his family and his divorce attorney to testify that they had no knowledge of the alleged sexual abuse of Robin Sanseverino by the defendant during the marriage.

The prosecutor did not mention Robin Sanseverino's testimony in his summation to the jury. In its jury charge, the trial court instructed the jury that it could consider her testimony only as evidence of a common scheme or plan to commit sexual abuse, not as evidence of the defendant's bad character or propensity to commit criminal acts.[23] The court did not give a charge on character evidence in this regard, and defense counsel stated on the record that he had no objection to the charge as given.

The defendant submits that the trial court improperly admitted Robin Sanseverino's testimony as evidence of a common scheme or plan under the test set forth previously and that the impropriety was harmful. The state admits that it improperly had inquired into specific

[23] The trial court specifically had stated: "In this case, the defendant's [former wife], Robin Sanseverino, testified that the defendant compelled her to have sexual intercourse against her will and that he abused her sexually and mentally during the pendency of their marriage. This evidence offered by the state of prior acts of misconduct by the defendant is not being admitted to prove the bad character of the defendant or the defendant's tendency to commit criminal acts. Such evidence is being admitted solely to show or establish a common scheme in the commission of criminal acts or the existence of the intent which is a necessary element of the crime charged.

"You may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity. You may consider such evidence, if you believe it and further, find it logically, rationally, and conclusively supports the issues for which it is being offered by the state but only as it may bear here on the issues of establishing a common scheme in the commission of criminal acts or the existence of the intent which is a necessary element of the crime charged."

instances of sexual abuse during its direct examination of Robin Sanseverino,[24] but contends that the defendant's claim on appeal must be limited to the objection he raised at trial that the evidence was unduly prejudicial. The state maintains that the trial court did not abuse its discretion in admitting the testimony because it was not more prejudicial than probative, and that, in any event, any error was harmless.

Even if we were to assume, without deciding, that the trial court improperly admitted the evidence as evidence of a common scheme or plan, we conclude that the defendant failed to meet his burden of providing that such impropriety was harmful. When an evidentiary error is nonconstitutional in nature, as in the present case, the defendant bears the burden of showing it was harmful. *State* v. *Sawyer*, supra, 279 Conn. 352. "[A] nonconstitutional error is harmless when an appellate

[24] Specifically, the state admits that it "more properly should have simply . . . had [the defendant's former wife] offer her opinion regarding whether, based on her knowledge of the defendant's character, she believed he would force someone to engage in sexual intercourse, and . . . asked the defendant's four character witnesses if their opinion, that based on their knowledge of the defendant they did not believe he would forcibly restrain or compel another to engage in sex, would have been altered if they were aware that the defendant, during his marriage to his [former wife], repeatedly forced her against her will to engage in sex." Without passing judgment on these specific contentions, we note that it long has been our rule that evidence of prior specific acts may not be used as rebuttal evidence when a defendant has put his character at issue. *State* v. *Martin*, 170 Conn. 161, 163–65, 365 A.2d 104 (1976) ("Whether or not the accused produces testimony of reputation or opinion to prove a trait, the prosecution may not use specific acts of misconduct to disprove the trait. . . . There is a distinction between the prosecution's use of specific acts in rebuttal to disprove the trait in question and the prosecution's use of specific acts in the cross-examination of a character witness. When a character witness has given his opinion as to a particular trait, the state may cross-examine that witness concerning specific acts, not to prove the truth of such facts, but to test the credibility of the character witness by ascertaining his good faith, his source and amount of information and his accuracy." [Citations omitted.]); see also Conn. Code Evid. § 4-4 (c) and commentary.

court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) Id., 357.

"[W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial." (Internal quotation marks omitted.) Id., 358.

The state's evidence independent of Robin Sanseverino's testimony provided a strong case against the defendant. The fact that C and G gave nearly identical accounts of the sexual assaults by the defendant within one year of each other significantly enhanced the inference of guilt and strengthened the state's case. Both victims were adults and had a good memory of the key details of the assaults. Moreover, the fact that Robin Sanseverino's testimony was offered by the state in rebuttal to earlier character evidence that the defendant had presented conveyed to the jury its limited importance to the state's case. Thus, we conclude that the state's case was strong and that it reasonably could have supported a guilty verdict independent of the contested testimony. See id. (strength of state's case was key factor in determining harmfulness of error in admission of uncharged misconduct in sex crimes case).

Three other factors influence our determination that the error was not harmful. First, the defendant had, and took full advantage of, the opportunity to present

evidence in surrebuttal of his former wife's testimony. Specifically the defendant's brother, Joseph Sanseverino, his nephew, Pasquale Serino, and his sister, Angela Sanseverino testified that they had never observed any signs of abuse between the defendant and his former wife while they were married. The defendant's divorce attorney, Marcus Bordiere, also testified that no allegations of sexual abuse had surfaced during the course of the dissolution proceedings. Moreover, the defendant had, prior to Robin Sanseverino's testimony, called four witnesses to testify to his good character in relation to his treatment of women. Second, any prejudice the defendant suffered was mitigated in part by the fact that he was the party who opened the door to the character evidence and thus it would have been entirely proper for the state to have called Robin Sanseverino to give her opinion as to the defendant's violent character in rebuttal to the defendant's evidence of his good character. Third, the state's attorney did not rely on or mention Robin Sanseverino's testimony during his summation to the jury, thus confining its effect to the rebuttal portion of his case.

The defendant claims, however, that we should find harmful error for the same reason that we did in *State v. Ellis*, supra, 270 Conn. 352. In *Ellis*, we addressed a defendant's claim that the trial court improperly had admitted testimony as evidence of a common plan or scheme from three young girls alleging prior sexual misconduct by the defendant in a case involving a fourth victim, Sarah S. Id. We concluded that the allegations of abuse by Sarah S. and those by the other girls were materially different because the abuse of Sarah S. was "far more frequent and severe." Id., 359. This and other differences in the relationship between the defendant and Sarah S. led us to determine that the admission of the evidence relating to the other girls was improper. Id., 358–65. In determining that the impropriety was

harmful, we concluded that "[t]he sheer quantity of testimony concerning the defendant's abuse of the other girls was likely to have been harmful in its cumulative effect on the jury's deliberations." Id., 368. We further concluded that the trial court improperly had consolidated the trials of charges relating to the incidents involving Sarah S. with charged sexual misconduct involving two of the other girls, whose testimony was admitted to prove a common scheme or plan, because the evidence of Sarah S.'s abuse was "substantially more egregious . . . ." Id., 378.

In the present case, we previously have determined that allegations of sexual assault against C and G would have been cross admissible at separate trials. Thus, in contrast to the facts in *Ellis*, wherein the allegations of *three* additional victims improperly had been admitted, we do not conclude that the jury would have been overwhelmed by the testimony of the defendant's former wife in the same way as it would have been had multiple additional victims come forward.

The defendant contends that, although Robin Sanseverino was the only witness who testified as to prior uncharged conduct, the magnitude of the abuse that she described was so much greater than that described by C and G that the effect was the same as in *Ellis*. We have trouble with this comparison, however, because Robin Sanseverino's testimony did not bear on guilt in the same way. As we have stated, C and G's allegations, in combination, fit a common pattern and modus operandi of sexual abuse of employees and thereby enhanced the inference of guilt. *State* v. *McKenzie-Adams*, supra, 281 Conn. 525 (evidence of sexual misconduct against two victims offered to prove common scheme or plan "sufficiently similar to permit the jury to infer that, if [the defendant] was guilty of the offense involving one victim, then he was also guilty of the offenses involving the other"). In stark contrast, Robin

Sanseverino's allegations of sexual abuse did not tend to prove a common scheme or plan on the part of the defendant to sexually abuse his female employees. Accordingly, we reject the defendant's alternate ground for affirmance.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction: (1) to reverse the judgment of the trial court with respect to the conviction of kidnapping in the first degree and to remand the case to the trial court with direction to render judgment of not guilty on that charge; and (2) to affirm the judgment of the trial court in all other respects.

In this opinion ROGERS, C. J., and NORCOTT and PALMER, Js., concurred.

ZARELLA, J., dissenting. The majority observes that its decision is compelled by *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008). Although I concurred in the result reached in *Salamon*, I disagreed with the majority's reasoning and its new construction of our state's kidnapping statutes. I maintain my position that the construction that this court adopted in *Salamon* is misguided.[1] I disagree with the majority's conclusion in the

---

[1] The majority observes that "[w]e may apply the rule announced in *Salamon* to the present case because this court long has stated that a rule enunciated in a case presumptively applies retroactively to pending cases." Footnote 11 of the majority opinion. I agree with the majority that retroactive application of *Salamon* to this case is appropriate but would elaborate on the majority's statement by noting that we have recognized that judicial construction of a statute can operate like an ex post facto law and thus violate a criminal defendant's due process right to fair warning as to what conduct is prohibited. See, e.g., *State* v. *James G.*, 268 Conn. 382, 409, 844 A.2d 810 (2004); *State* v. *Cobb*, 251 Conn. 285, 436, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000). Because our decision in *Salamon* purports to narrow the potential conduct encompassed by our kidnapping statutes in situations in which a defendant restrains a victim solely to commit another crime, this new construction does not operate to "disadvantage the offender affected by it . . . by altering the definition of criminal conduct . . . ." (Internal quotation marks omitted.)

present case that the defendant, Paolino Sanseverino, is entitled to a judgment of acquittal rather than a new trial on the kidnapping charge. I conclude that, as a result of this court's "about-face" reversal of its prior interpretation of the crime of kidnapping and open questions in our jurisprudence as to the appropriate response to the defendant's appeal, the case should be remanded for a new trial or the parties should be allowed to file supplemental briefs. Additionally, I write to elaborate on the inconsistencies and unanswered questions concerning the law of kidnapping that *Salamon* and this case have created. Accordingly, I respectfully dissent.

I

To explain fully my concerns with the direction that this court has taken concerning our restraint-based crimes, I begin with a description of the seven *Salamon/Sanseverino* precepts on which the law of kidnapping is now based.

First, when a defendant is charged with the crime of kidnapping and another assault-type crime, that is, one that necessitates restraint of the victim, the state must prove beyond a reasonable doubt that the act of restraint on which the kidnapping is based is not merely incidental to the acts necessary for commission of the other crime. See id., 542.

Second, when a defendant is charged with the crime of kidnapping but not with an underlying assault-type crime, even though the factual circumstances suggest that he could have been charged with such a crime, he is entitled to a jury instruction on that noncharged crime, and the state must prove beyond a reasonable doubt that the act of restraint on which the kidnapping

*State* v. *James G.*, supra, 409. Therefore, retroactive application of this court's new construction of the crime of kidnapping is not constitutionally barred.

charge is based is not merely incidental to the acts necessary for commission of that noncharged crime. See id., 550 n.35.

Third, the question of whether the restraint on which a kidnapping charge is based is merely incidental to another crime is a factual question for the jury to determine. Id., 547–48.

Fourth, our well settled principle that the crime of kidnapping does not require any asportation of the victim or any minimum length or degree of confinement remains unchanged. Id., 546.

Fifth, a defendant may be convicted of unlawful restraint when the restraint on which the charge is based is merely incidental to the commission of another assault-type crime. See id., 548.

Sixth, there exists an ambiguity in the language of the statutory scheme as to the requisite mental state required to commit an unlawful restraint and that required to commit a kidnapping. This ambiguity makes it difficult to ascertain at what point an unlawful restraint crosses the line to become a kidnapping. Id., 534.

Seventh, unlawful restraint and kidnapping are both specific intent crimes. Id., 542 n.28.

I first discuss the unintended "merger effect" that I perceive will result from the application of these principles. The majority opinion in *Salamon* did not employ the word "merger," and the majority in the present case merely likens the analysis it conducts to that used under the merger doctrine. Footnotes 9 and 10 of the majority opinion. I suggest, however, that the effect of the *Salamon* kidnapping construction is to take conduct that, by itself, would support a conviction for kidnapping and, in situations in which the defendant perpetrated

another assault-type crime, *merge* the would be kidnapping offense into that other crime. The following hypothetical illustrates my concerns.

Assume that a defendant, intending to commit a sexual assault, abducts a victim by threatening to hurt her if she tries to leave the room in which she is restrained.[2] The defendant leaves the room to draw the shades in a front window. Upon returning to the room in which the victim had been restrained, the defendant discovers that the victim had managed to escape, thus thwarting the intended sexual assault. Under these facts, the *Salamon* "incidental" rule would not apply because there is no underlying assault against which to measure the incidental nature of the restraint.[3] Therefore, the defendant could be charged and convicted of kidnapping.[4] Under the facts of the present case, however, *Salamon* dictates that, because the defendant was not thwarted but *succeeded* in sexually assaulting his victim, the state is faced with the additional burden of demonstrating that the restraint had legal significance independent of the assault in order to obtain a kidnapping conviction. The majority concludes that the state could not possibly meet this burden, and, therefore, only a sexual assault and no kidnapping occurred. My hypothetical illustrates that, in light of this *Salamon/Sanseverino* approach, a defendant who successfully *sexually assaults and abducts* his victim may be convicted of sexual assault only, whereas a defendant who restrains a victim intending to sexually assault her but never accomplishes the sexual assault, faces conviction for kidnapping. In

---

[2] General Statutes § 53a-91 (2) defines "abduct" in relevant part: "[T]o restrain a person with intent to prevent his liberation by . . . (B) *using or threatening to use physical force or intimidation.*" (Emphasis added.)

[3] See second *Salamon/Sanseverino* precept in the text of this opinion.

[4] The majority opinion in this case and *Salamon* reaffirmed our long-standing principle that the crime of kidnapping does not require asportation of a victim or a restraint for any minimum length of time. See fourth *Salamon/ Sanseverino* precept in the text of this opinion.

other words, the kidnapping, a more serious crime, merges into the sexual assault, a less serious crime.

Neither the majority in *Salamon* nor the majority in *Sanseverino* expressly adopts by name a merger doctrine. Thus, I assume that they would argue that there is no merger effect because, unless the state proves that the restraint in connection with the kidnapping was not merely incidental to an assault, there are not two distinct crimes capable of being merged. I suggest, however, that this argument is illogical because it depends on acceptance of the premise that conduct that alone may constitute the crime of kidnapping is somehow no longer sufficient to prove that *same crime* under factual circumstances that may give rise to a conviction for another assault-type offense.[5] If the conduct is kidnapping in one circumstance and not kidnapping in another, I conclude that the only rational viewpoint is to recognize that the kidnapping has, in effect, been merged into the underlying crime.

My concern about this probable result is exacerbated by the fact that we repeatedly and expressly have rejected the merger doctrine in the context of kidnapping. *State* v. *Amarillo*, 198 Conn. 285, 304, 503 A.2d 146 (1986); see *State* v. *Chetcuti*, 173 Conn. 165, 170, 377 A.2d 263 (1977). "[W]here the elements of two or more distinct offenses are combined in the same act, prosecution for one will not bar prosecution for the other. . . . Where the *intent* required to constitute kidnapping in the first degree is present, the fact that the perpetrator's underlying motive for the detention is the consummation of [sexual assault] . . . does not preclude a conviction for kidnapping." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Amarillo*, supra, 305. Furthermore, the potential

---

[5] See second *Salamon/Sanseverino* precept in the text of this opinion.

"merging" that *Salamon* permits of an otherwise technical act of kidnapping—conduct that the statutory definition of the crime would encompass—into a less serious offense is inconsistent with our jurisdiction's adoption of merger in other contexts. We have adopted merger in cases involving conduct that gives rise to criminal liability for both a greater offense and a lesser included offense. In such situations, however, we have held that the lesser offense merges into the greater offense, not vice versa. See, e.g., *State* v. *Gould*, 241 Conn. 1, 24, 695 A.2d 1022 (1997).

I acknowledge that the present case and *Salamon* address only the situation in which a defendant is charged with kidnapping and the facts support a charge for another underlying crime. This court has not yet encountered a case post-*Salamon* like my hypothetical, which presents only a kidnapping conviction for our review. I expect that such a case will illustrate that my concerns about this unintended "merger" effect are justified and may result in differing criminal liability for the same or similar conduct. See F. Parker, "Aspects of Merger in the Law of Kidnapping," 55 Cornell L. Rev. 527, 530 (1970) (comparing New York cases that sustained kidnapping conviction when single crime charged with cases in which kidnapping conviction was reversed because restraint was merely incidental to another crime, and concluding that "the only time the kidnapping charge will be subjected to severe judicial scrutiny is when another felony is also committed"). I consider such a result in conflict with our existing jurisprudence and likely to result in injustice to defendants and victims.

A further question raised by this *Salamon/Sanseverino* paradigm is whether the crime of *attempted* kidnapping is still a viable offense under certain circumstances. General Statutes § 53a-49 (a) defines criminal attempt and provides in relevant part that "[a] person

is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." I suggest that the incidental rule announced in *Salamon* may effectively make it impossible for a defendant to be guilty of an attempted kidnapping when the attempt is accomplished through a physical assault and the victim manages to thwart the defendant's plan. *Salamon* overruled, in situations in which an assault-type crime accompanied the restraint of a victim, our long-standing precedent that the proper focus for a jury is on whether a defendant possessed the necessary *intent* for kidnapping and dictates, instead, that a jury must determine whether the act of restraint is incidental to the commission of the assault-type crime. Our existing interpretation of attempt crimes, however, would dictate that if the defendant acted with the intent for kidnapping, then the assault could be viewed as a "substantial step" toward commission of the crime.[6]

Lastly, I note that both *Salamon* and the majority's decision in the present case describe a perceived "ambiguity" in the different intent requirements for kidnapping and unlawful restraint that makes it difficult to determine "how the intent to prevent [a victim's] liberation . . . that is, the intent necessary to establish an

---

[6] See *State* v. *Carroll*, 20 Conn. App. 437, 437–39, 567 A.2d 1258 (1990) (conviction of attempted kidnapping in second degree and assault in first degree arising out of single factual circumstance affirmed on appeal). "[T]he defendant [in *Carroll*] forced the victim into his car and displayed a handgun in response to repeated resistance by both the victim and her family. . . . [T]he evidence, when considered in the light most favorable to sustaining the jury's verdict, supports a finding that the defendant had taken a substantial step toward preventing the victim's rescue by third parties. Consequently . . . [the defendant's] conviction for attempted kidnapping must stand." Id., 439.

abduction, differs from the intent to interfere substantially with [a victim's] liberty . . . ." (Internal quotation marks omitted.) Majority opinion, p. 622, quoting *State v. Salamon*, supra, 287 Conn. 534. While I continue to disagree with the description of these intent elements; see *State v. Salamon*, supra, 576 (*Zarella, J.*, concurring in part and dissenting in part); more relevant at present is my observation that neither *Salamon* nor the present case offers any resolution of this ambiguity. Rather, *Salamon* relied on this ambiguity to reinterpret the kidnapping statutes, but the court's analysis in that case focused solely on the relationship between kidnapping and *another nonrestraint based offense*, e.g., sexual assault, assault or robbery. The majority in the present case reiterates the presence of this perceived ambiguity, also offers no resolution and even suggests that the analysis in *Salamon* "resolve[d] this ambiguity . . . ." Thus, this court now has asserted multiple times that the line between an unlawful restraint and a kidnapping is difficult to draw while remaining silent as to what the appropriate distinction might be. The court in *Salamon* rejected the manner in which I distinguished these two crimes but offered no resolution of its own. The majority's reference to this ambiguity in the present case only further emphasizes this court's failure to provide any guidance to future defendants, prosecutors or trial courts with respect to the application of our restraint based offenses. I am greatly troubled by the willingness of the majority in the present case and in *Salamon* to reject long-standing precedent in favor of a new paradigm that leaves so many issues unresolved and that creates a likelihood that our kidnapping statutes will be inconsistently and unjustly applied.

## II

I now turn to my disagreement with the majority's decision in the present case to direct a judgment of acquittal without providing the parties an opportunity to

alter or supplement their arguments in light of *Salamon.*
See *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114,
150, 807 A.2d 519 (*Schaller, J.*, dissenting) (disagreeing
with majority opinion and noting that parties at least
should be allowed to file supplemental briefs), cert.
granted, 262 Conn. 923, 812 A.2d 864 (2002) (appeal
withdrawn October 21, 2003). In *Salamon,* the court
concluded that "when the evidence reasonably supports
a finding that the restraint was *not* merely incidental
to the commission of some other, separate crime, the
ultimate factual determination must be made by the
jury." (Emphasis in original.) *State* v. *Salamon,* supra,
287 Conn. 547–48. The majority in the present case
reiterates that "the question of whether kidnapping may
stand as a separate offense *is one for the jury . . . .*"
(Emphasis added.) After this observation, however, the
majority, sua sponte, applies a sufficiency of the evi-
dence test to the facts in the record to determine
whether, under the new statutory construction
announced in *Salamon,* the state could have proven
beyond a reasonable doubt that the restraint at issue
had legal significance independent of the restraint nec-
essary to perpetrate the sexual assault. The majority
then concludes that "no reasonable jury could have
found the defendant guilty of kidnapping in the first
degree on the basis of the evidence that the state prof-
fered at trial." The majority reaches this conclusion
without any arguments or briefing from the parties on
this issue.

I disagree with this approach, first, because I consider
the more appropriate characterization of the defen-
dant's claim, post-*Salamon,* to be that the jury was
improperly instructed on the elements of kidnapping.[7]
As I previously noted, *Salamon* overruled this court's

[7] It is axiomatic that criminal defendants have a constitutional right to a
trial by a properly instructed jury. See, e.g., *State* v. *Padua,* 273 Conn. 138,
166, 869 A.2d 192 (2005).

prior interpretation of the kidnapping statutes, pursuant to which we consistently had rejected the claim that a defendant could not be convicted of kidnapping if his restraint of the victim was merely incidental to the restraint necessary to commit another crime. Thus, *Salamon* introduced a new element to the crime of kidnapping. In the present case, the trial court did not instruct the jury on that element. Moreover, no objection to the trial court's instructions was likely even contemplated because the court, the state and the defendant reasonably believed that the court's instructions were legally correct. Indeed, the trial court's instructions were in keeping with this court's well settled, pre-*Salamon* interpretation of the kidnapping statutes. It is clear, therefore, that, in light of *Salamon*, the trial court's instructions prejudiced the defendant because, in the absence of an instruction in accordance with this court's decision in *Salamon*, it was easier for the jury to find the defendant guilty of kidnapping. The proper remedy for a harmful instructional error, including one involving the failure to charge on an essential element of a criminal offense, is a new trial, not a judgment of acquittal.[8] See, e.g., *State* v. *Desimone*, 241 Conn. 439, 459 n.27, 696 A.2d 1235 (1997); see also *State* v. *Salamon*, supra, 287 Conn. 514 and n.7 (remanding case for new trial in light of newly announced interpretation of kidnapping statutes).

The majority's election to treat the defendant's challenge to his kidnapping conviction as a claim for "insufficiency of evidence," rather than "instructional error," and its conclusion that the evidence is insufficient,

[8] I note that, on retrial, the defendant would be entitled to an instruction consistent with the narrower construction of the kidnapping statutes announced in *Salamon*, and if the majority's assessment that there is insufficient evidence is correct, then the state simply may elect to stop pursuing prosecution for the kidnapping charge.

requires a judgment of acquittal, however, because double jeopardy principles preclude the retrial of the defendant when his conviction is reversed due to insufficiency of the evidence.[9] E.g., *Burks* v. *United States*, 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); *State* v. *Padua*, 273 Conn. 138, 178, 869 A.2d 192 (2005). Nevertheless, assuming that the majority's election to characterize the defendant's claim as one challenging the sufficiency of the evidence is proper, I am not convinced that the majority has undertaken this analysis correctly. To explain fully my concerns with the majority's approach and my reasons for concluding that, in the absence of an order remanding the defendant's case for a new trial on the kidnapping charge, supplemental briefs are necessary, a brief explanation of *Burks* and a line of cases that followed is useful.

In *Burks*, the United States Supreme Court recognized an exception to the general rule that the proper remedy for an error at trial is to grant the defendant a new trial. See *Burks* v. *United States*, supra, 437 U.S. 15–16. The court in *Burks* observed: "Various rationales have been advanced to support the policy of allowing retrial to correct trial error, but in our view the most reasonable justification is that . . . [i]t would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. . . . In short, reversal for trial error, as distinguished from evidentiary

<hr>

[9] I acknowledge that, if the parties were given, as I urge, an opportunity to file supplemental briefs, and the defendant raised an actual sufficiency of the evidence claim, it is well settled that we would resolve that claim prior to addressing any claims of trial error, including instructional impropriety, to avoid any double jeopardy issues. See *State* v. *Padua*, 273 Conn. 138, 178, 869 A.2d 192 (2005). Nevertheless, for the reasons that I set forth in the text of this opinion, regardless of the order in which we would address these claims, I am not convinced that the majority's approach to the sufficiency of evidence analysis is correct or consistent with our approach to similar claims.

insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. . . . *Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect,* [e.g., incorrect jury instructions]. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for [e]nsuring that the guilty are punished. . . .

*"The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble."* (Citations omitted; emphasis added; internal quotation marks omitted.) Id. In *Burks,* the court dealt only with a sufficiency of evidence claim.

Ten years later, the United States Supreme Court confronted the issue of whether the double jeopardy clause similarly bars retrial of a defendant "when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction . . . ." *Lockhart v. Nelson,* 488 U.S. 33, 40, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988). In *Lockhart,* the court concluded that a retrial was not barred by the constitution. See id. "It appears . . . to be beyond dispute that this is a situation described in *Burks* as reversal for 'trial error'— the trial court erred in admitting a particular piece of evidence, and without it there was insufficient evidence to support a judgment of conviction. But clearly *with* that evidence, there was enough to support the sentence . . . ." (Emphasis in original.) Id. The appropriate analysis, according to *Lockhart,* for reviewing a claim of insufficiency of evidence when it arises in conjunction

with a claim that evidence improperly was admitted is to "consider all of the evidence admitted by the trial court in deciding whether retrial is permissible . . . ." Id., 41; see also *State* v. *Gray*, 200 Conn. 523, 538, 512 A.2d 217 (adopting same approach pre-*Lockhart*), cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). The United States Supreme Court explained that "[p]ermitting retrial in this instance is not the sort of governmental oppression at which the [d]ouble [j]eopardy [c]lause is aimed; rather, it serves the interest of the defendant by affording him an opportunity to obtai[n] a fair readjudication of his guilt free from error. . . . [The court's] holding today thus merely *recreates the situation that would have been obtained if the trial court* had [not committed error] . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *Lockhart* v. *Nelson*, supra, 42.

In *Gray*, this court observed the rationale underlying the approach that the United States Supreme Court subsequently adopted in *Lockhart*. We quoted the Supreme Court of Missouri with approval: "When the trial court erroneously admits evidence resulting in reversal . . . the [s]tate should not be precluded from retrial even though when such evidence is discounted there may be evidentiary insufficiency. *The prosecution in proving its case is entitled to rely upon the rulings of the court and proceed accordingly.* . . . [T]he [s]tate is not obligated to go further and adduce additional evidence that would be . . . cumulative. Were it otherwise, the [s]tate, to be secure, would have to assume every ruling by the trial court on the evidence to be erroneous and marshall and offer every bit of relevant and competent evidence. The practical consequences of this would adversely affect the administration of justice . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Gray*, supra, 200 Conn. 538, quoting *State* v. *Wood*, 596 S.W.2d 394, 398–99 (Mo.),

cert. denied, 449 U.S. 876, 101 S. Ct. 221, 66 L. Ed. 2d 98 (1980). We further observed that, if the analysis did not involve review of *all* the evidence that the jury had considered, "unfairness to the state might result because the state might have produced other evidence at the trial if the evidence held inadmissible upon appellate review had been excluded at the trial." *State* v. *Gray*, supra, 539–40; see also *Moff* v. *State*, 131 S.W.3d 485, 490 (Tex. Crim. App. 2004) ("'This rule rests in large part [on] what is perceived as *the unfairness of barring further prosecution where the [s]tate has not had a fair opportunity to prove guilt.* A trial judge's commission of trial error may lull the [s]tate into a false sense of security that may cause it to limit its presentation of evidence." [Emphasis added.]).

In the present case, the majority analyzes the sufficiency of the evidence against the law as it was announced in *Salamon* after the defendant's trial. In concluding that the evidence was insufficient to sustain the defendant's kidnapping conviction, the majority presumes that the jury properly was instructed on the law when it determined the defendant's guilt. The majority may be correct that, on the basis of the facts presented at the defendant's trial, the state did not demonstrate that the defendant perpetrated a restraint of the victim that has legal significance independent of the sexual assault. The state, however, had no knowledge when presenting its case to the jury that it was necessary to make such a showing. Our law consistently has rejected such a construction of the crime of kidnapping. Arguably, the majority's approach is inconsistent with the *Gray* and *Lockhart* line of cases. These cases recognize that the state reasonably may rely on the rulings of the trial court in presenting its case. Under the law existing at the time of trial, the evidence clearly was sufficient for a reasonable jury to find the defendant guilty of kidnapping. See, e.g., *State* v. *Luurtsema*, 262 Conn.

179, 202–203, 811 A.2d 223 (2002). I suggest that, because the court in *Salamon* adopted an interpretation of our kidnapping statutes that this court previously and repeatedly had considered and rejected, the state may not have had its "one fair opportunity" to present its case. *Burks* v. *United States*, supra, 437 U.S. 16. An alternative approach, and one that appears to be supported by our case law, is to ask whether the evidence introduced was sufficient to convict on the law that was in effect at the time the jury was instructed on it at trial. Cf. *State* v. *Gray*, supra, 200 Conn. 538–40. If the reviewing court determines that the evidence was sufficient, then that court must consider any claim of instructional impropriety that may warrant a new trial.

In support of drawing this analogy between the *Gray* and *Lockhart* line of cases and the present case, I note that the court in *Burks* included instructional error in its examples of "trial error" that may warrant a new trial. *Burks* v. *United States*, supra, 437 U.S. 15. Furthermore, I find it persuasive that one of the rationales in *Gray* for permitting retrial is that the state reasonably may rely on a court's rulings and, if they are later deemed to be erroneous, the state would be prejudiced by any judgment of acquittal because it had been deprived of its "one fair opportunity" to convict. Id., 16; see *State* v. *Gray*, supra, 200 Conn. 538. Similarly, in the present case, the state's charging decisions and its presentation of evidence were made in reasonable reliance on our well settled interpretation of our kidnapping statutes.[10] See *Losey* v. *Frank*, 268 F. Sup. 2d 1066,

---

[10] Significantly, I note that, if this case were remanded for a new trial, as I maintain is the proper action, the state would have an opportunity to consider the relevant facts in light of the incidental restraint rule adopted in *Salamon*, as well as the new principle that *Salamon* adopts with respect to the crimes of unlawful restraint and kidnapping. In *Salamon*, the court noted that it did not "retreat from the general principle that an accused may be charged with and convicted of more than one crime arising out of the same act or acts, as long as all of the elements of each crime are proven. Indeed, because the confinement or movement of a victim that occurs

1071 (E.D. Wis. 2003). "[I]f the prosecution did not have

simultaneously with or incidental to the commission of another crime ordinarily will constitute a substantial interference with that victim's liberty, such restraints still may be prosecuted under the unlawful restraint statutes." *State v. Salamon*, supra, 287 Conn. 548. Our case law suggests that the state, on remand, may file a substitute information charging a defendant with unlawful restraint in lieu of or in addition to kidnapping. See, e.g., *State* v. *Almeda*, 211 Conn. 441, 443–44, 560 A.2d 389 (1989); *State* v. *Vinal*, 205 Conn. 507, 508, 534 A.2d 613 (1987). In *Almeda*, which was the appeal from the defendant's retrial; see *State* v. *Almeda*, supra, 442–44; we observed that, in our opinion regarding the defendant's first appeal, we had "explicitly indicated that on a second trial the defendant could be prosecuted on the charge of assault in the first degree," even though he had not been prosecuted for that crime in his first trial, because the defendant would not be "called upon . . . to answer for any activities that he had not been required to defend against in his first trial on the original information." Id., 447. The same is true in the present case.

Furthermore, I conclude that, under the facts elicited at the defendant's trial in the present case, not only would a charge of unlawful restraint be proper, but a charge of kidnapping in the second degree also may be supported. The majority correctly notes that the defendant was convicted of kidnapping in the first degree pursuant to General Statutes § 53a-92 (a) (2) (A). To be guilty of this crime, the state had to prove that the defendant restrained the victim not only with the intent to prevent her liberation but also with the intent to "inflict physical injury upon [her] or violate or abuse [her] sexually . . . ." General Statutes § 53a-92 (a) (2) (A). In light of *Salamon*'s dictate that the restraint to support the kidnapping charge be more than merely incidental to the sexual assault and the lack of evidence that the defendant maintained an intent to abuse the victim sexually after the assault ended, I acknowledge that the state may not be able to meet its burden of proving that the defendant is guilty of kidnapping in the first degree. Kidnapping in the second degree, however, a lesser included offense, does not require the additional intent element. See General Statutes § 53a-94; see also *State* v. *Dahlgren*, 200 Conn. 586, 587–88, 606, 512 A.2d 906 (1986) (second degree kidnapping is lesser included offense of first degree kidnapping and does not require that defendant have intent to abuse victim sexually). Admittedly, a charge of kidnapping in the second degree still would require the state to demonstrate that the restraint perpetrated had legal significance independent of that necessary to commit the sexual assault. I suggest that the record contains facts that may support such a finding.

The majority's conclusion that no reasonable jury could find a restraint of independent significance to support a conviction of kidnapping in the first degree appears to be premised on the notion that the restraint began and ended with the defendant's physical hold on G, one of the victims. According to the majority, the restraint and the sexual assault ended when

a full, fair and complete opportunity to establish the defendant's culpability because the conviction was set aside as the result of a trial error, such as the trial court's erroneous exclusion or admission of evidence *or erroneous instruction to the jury*, the decision will not be treated as equivalent to a verdict of acquittal and reprosecution of the defendant will not be barred." (Emphasis added.) Id. Further, I suggest that we cannot know from the record before us whether there was additional evidence that the state could have proffered at trial to support a kidnapping charge under the new *Salamon* paradigm.

Not surprisingly, because of the extremely startling 180 degree reversal that this court performed in *Salamon*, my research has revealed no authority from Connecticut that addresses whether *Gray* and *Lockhart* should inform our review of a sufficiency of evidence claim when it arises in conjunction with a complete

---

the defendant released his hold on G. Our statutory scheme governing restraint, however, is broader than the majority's analysis might suggest. A victim may be abducted not only by the imposition of physical force but also by the threat of physical force or intimidation. General Statutes § 53a-91 (2). In the present case, G testified that, after the sexual assault, the defendant *released her arms, and she locked herself in the store bathroom* until someone else entered the bakery, which is when she "knew she'd be safe." Furthermore, G testified that the defendant had threatened to hurt her and her family if she told anyone about the sexual assault. The majority concludes that *Salamon* dictates a finding that no reasonable jury could find the defendant guilty of kidnapping because the restraint clearly was incidental to the sexual assault. I am inclined, however, to consider the fact that G locked herself in the bathroom after the sexual assault because she may have been threatened by the defendant and afraid of further physical assault, especially in light of the jury's clear determination that the defendant possessed *the requisite intent to prevent G's liberation*. On this basis, I would suggest that the matter is worthy of further exploration as to when the restraint of G actually ended. See, e.g., *State* v. *Montgomery*, 254 Conn. 694, 732 n.43, 759 A.2d 995 (2000) ("[b]ecause kidnapping involves interfering with the victim's liberty, *it continues until that liberty is restored*" [emphasis added]). Thus, G's self-confinement in the bathroom may have constituted a continuation of the interference with her liberty that had begun with the sexual assault.

reversal of well settled criminal law. For the foregoing reasons, I conclude that the parties should be given the opportunity to argue that the evidence introduced at trial was sufficient when considered against the trial court's instructions to the jury and that, because *Salamon* rendered those jury instructions improper, the defendant deserves a readjudication of his guilt, free from error, and the state deserves its "one fair opportunity" to prosecute the defendant. *Burks* v. *United States*, supra, 437 U.S. 16.

In addition to any argument that the state or defendant could advance with respect to whether the defendant should be entitled to a judgment of acquittal on the kidnapping charge or whether the case should be remanded for a new trial, my review of our case law and relevant case law in other jurisdictions strongly suggests that, if given the opportunity to file a supplemental brief, the state could request that this court modify the judgment by directing the trial court to convict the defendant of a lesser included offense. The state, in the present case, charged the defendant with kidnapping in the first degree, and the defendant was convicted on that charge. In light of *Salamon*, as the majority in the present case has concluded, there is some doubt as to whether the evidence was sufficient to sustain a conviction of kidnapping in the first degree. We nevertheless have concluded previously that kidnapping in the second degree and unlawful restraint in the second degree are always lesser included offenses of kidnapping in the first degree. See General Statutes §§ 53a-92, 53a-94 and 53a-96; see also *State* v. *Dahlgren*, 200 Conn. 586, 587–88, 512 A.2d 906 (1986) (second degree kidnapping is lesser included offense of first degree kidnapping); cf. *State* v. *Boyd*, 178 Conn. 600, 601, 424 A.2d 279 (1979) (second degree unlawful restraint is lesser included offense of second degree kidnapping). Although the record reveals that neither

the defendant nor the state requested an instruction on these lesser included offenses, and that the trial court did not instruct the jury on them, the case law on the modification of judgments indicates that whether there are any circumstances under which we would approve the modification of a judgment when the jury has not been expressly instructed on any lesser included offenses is an open question in our jurisprudence.

The weight of our prior cases modifying a judgment for the purpose of convicting a defendant of a lesser included offense indicates that, to so modify the judgment, a jury must have been properly instructed on that lesser included offense, and, when a conviction of the greater offense is reversed due to insufficient evidence, the jury must have found that the state proved the elements constituting the lesser offense beyond a reasonable doubt. See *State* v. *Grant*, 177 Conn. 140, 147–49, 411 A.2d 917 (1979); see also *State* v. *Saracino*, 178 Conn. 416, 421, 423 A.2d 102 (1979) ("[s]ince the jury could have explicitly returned . . . a verdict [of guilty of the lesser included offense of fourth degree larceny], the defendant was aware of her potential liability for this crime and would not now be prejudiced by modification of the judgment"). "In [*Grant*] . . . and [*Saracino*], we held that even though the trial evidence did not support the defendant's conviction of the offense charged, we were free to modify the judgment to reflect a conviction of a lesser crime. We came to this conclusion because the evidence was sufficient to support a conviction of a lesser included offense on which the jury properly had been charged and the jury's verdict necessarily included a finding that the defendant was guilty of that lesser offense." *State* v. *Desimone*, supra, 241 Conn. 460 n.28. I note, however, that my research has revealed two of our cases that suggest that, although these prerequisites generally may be necessary, their

absence may not absolutely bar this court from modifying a judgment in *all* circumstances.

In *State* v. *McGann*, 199 Conn. 163, 506 A.2d 109 (1986), we modified a judgment of conviction from capital felony to murder; id., 179; because the latter crime was a lesser included offense and "the defendant could not have committed 'murder for hire' without also committing intentional murder . . . ." Id., 178. We modified the judgment of conviction because we concluded that "[t]he failure of the state to prove the additional element of a hiring to commit the murder leaves standing the finding . . . that the defendant did murder [the victim]." Id. I note, however, that, because that case involved a bench trial, there were no jury instructions that might have given the defendant notice of his criminal liability on the lesser included offense. Nor is it clear from our decision in *McGann* whether the state requested this court to modify the judgment. We noted only that "[o]ur conclusion that the judgment of the trial court was erroneous in convicting the defendant of a capital felony does not require a remand [for] a new trial." Id.

Our modification of the judgment of conviction in *State* v. *Greene*, 274 Conn. 134, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006), further calls into question the necessity that a jury be instructed on the lesser offense of which a reviewing court directs a modified judgment of conviction. In that case, the defendant was charged with, inter alia, murder as an accessory, and the trial court granted the state's request to instruct the jury on what it considered to be the lesser included offense of manslaughter in the first degree with a firearm as an accessory. Id., 154. On appeal, we concluded that such an instruction was improper because manslaughter in the first degree with a firearm is not a lesser included offense of murder. Id., 159–60. We rejected the defendant's contention that

the appropriate remedy for this constitutional violation of instructional error was a judgment of acquittal and determined that we could modify the judgment of conviction. Id., 160–62. In doing so, we recognized that "[t]his court has modified a judgment of conviction after reversal, if the record establishes that the jury necessarily found, beyond a reasonable doubt, all of the essential elements required to convict the defendant of a lesser included offense." Id., 160. We determined that, "[b]efore the jury could find the defendant guilty of manslaughter in the first degree with a firearm, the jury necessarily must have found the defendant guilty of manslaughter in the first degree. . . . Therefore, the trial court's improper instruction could not have affected the jury's finding that the defendant was guilty, beyond a reasonable doubt, of the essential elements of manslaughter in the first degree . . . ." (Citations omitted.) Id., 161. Significantly, however, in *Greene*, the trial court never instructed the jury that it could find the defendant guilty of manslaughter in the first degree. See id., 155. Rather, the trial court's instruction on the lesser included offense was that the jury could find the defendant guilty of manslaughter in the first degree *with a firearm*. See id. Nevertheless, we did not conclude that the the jury's inability to return explicitly a verdict of guilty of manslaughter in the first degree precluded us from modifying the judgment by directing the trial court to convict the defendant of that crime. But cf. *State* v. *Saracino*, supra, 178 Conn. 421.

As in *Greene*, in which we observed that the jury's verdict of guilty of manslaughter in the first degree with a firearm required the jury first to find beyond a reasonable doubt that all the elements of manslaughter in the first degree had been proven, in the present case, the jury found the defendant guilty of kidnapping in the first degree, an abduction crime that is predicated on a finding *first* that the defendant had committed an

unlawful restraint. Thus, *Greene* arguably suggests that this court, even in the absence of an *express* jury instruction on unlawful restraint in the second degree,[11] could modify the judgment by directing the trial court to convict the defendant of that lesser included offense.

Additionally, I note that the circumstances under which an appellate court may modify a judgment vary among different jurisdictions and never have been expressly decided by this court. Compare *United States* v. *Hunt*, 129 F.3d 739, 745–46 (5th Cir. 1997) (instruction not required but should be considered in determining whether modification of judgment unduly prejudicial to defendant), *United States* v. *Smith*, 13 F.3d 380, 383 (10th Cir. 1993) (no undue prejudice due to modification of judgment because possibility of instruction on lesser included offense existed throughout trial, and all elements were proven beyond reasonable doubt), and *Shields* v. *State*, 722 So. 2d 584, 587 (Miss. 1998) ("lesser included offense need not be before the jury in order to apply the direct remand rule"), with *United States* v. *Dhinsa*, 243 F.3d 635, 676 (2d Cir.) (because there was no jury instruction, court could not grant government's request to modify judgment of conviction), cert. denied, 534 U.S. 897, 122 S. Ct. 219, 151 L. Ed. 2d 156 (2001), *United States* v. *Dinkane*, 17 F.3d 1192, 1198 (9th Cir. 1994) (requiring jury instruction on lesser included offense to modify judgment), and *State* v. *Brown*, 360 S.C. 581, 594, 602 S.E.2d 392 (2004) (jury must be instructed on lesser included offense in order to remand for sentencing on that crime). Furthermore, the United

---

[11] We note that, even though the trial court in the present case did not expressly instruct the jury on the lesser included offense of unlawful restraint in the second degree, because that crime is a lesser included offense of kidnapping in the first degree and because the trial court instructed the jury on the elements of kidnapping in the first degree, it implicitly instructed the jury on the lesser offense inasmuch as the trial court necessarily instructed the jury on all of the elements comprising the crime of unlawful restraint in the second degree.

States Supreme Court has noted its approval of the four-pronged test announced by the District of Columbia Circuit Court of Appeals in *Allison* v. *United States*, 409 F.2d 445 (D.C. Cir. 1969). *Rutledge* v. *United States*, 517 U.S. 292, 305 n.15, 306, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996). This approach does not require the jury to be instructed on the lesser included offense. Rather, the test provides that a judgment can be modified only if it can be shown "(1) that the evidence adduced at trial fails to support one or more elements of the crime of which [the accused] was convicted, (2) that such evidence sufficiently sustains all the elements of another offense, (3) that the latter is a lesser included offense of the former, and (4) that no undue prejudice will result to the accused." *Allison* v. *United States*, supra, 450–51.

Finally, I make no assertion, at this point, as to the rule that this court should or would adopt; rather, I maintain that the parties in this case deserve an opportunity to argue the merits of each position as it relates to the appropriate course of action that this court should take in light of *Salamon*. The majority's only response to this point is that the state did not ask this court to modify the judgment of conviction. Perhaps, if the state were omniscient and, thus, capable of predicting the overruling of years of settled precedent, the majority's approach would be procedurally correct. I believe, however, that the better course would be to request supplemental briefs and then consider and decide the issue. Requiring the state to file a motion for reconsideration—a motion which could be denied—is hardly a solution to this court's deciding an issue in a legal vacuum. See footnote 16 of the majority opinion.

At best, I would renounce the problematic construction of our kidnapping statutes that this court adopted in *Salamon*. Absent that, I maintain that the correct

application of this new construction dictates, at a minimum, that the parties in the present appeal be given an opportunity to consider its impact and advocate for the most lawful course of action to follow.