## BLUEFIN MORTGAGE FUND, LLC, ET AL. *v.* SHERI A. SPEER (SC 18246)

Rogers, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

Argued February 11—officially released April 28, 2009

*Richard J. Pascal*, for the appellant (defendant).

*David R. Babbitz*, for the appellees (plaintiffs).

NORCOTT, J. The defendant, Sheri A. Speer, appeals[1] from the judgment of the trial court awarding damages to the plaintiffs, Bluefin Mortgage Fund, LLC (Bluefin), and PFH Mortgage, LLC (PFH),[2] arising from the defendant's breach of a commercial loan contract. On appeal, the defendant claims that the trial court's judgment was improper because: (1) the original agreement entered into by the parties was not a valid contract on account of a mutual mistake by the parties regarding a material term of that agreement; and (2) the trial court improperly based its decision on a second "revised" agreement, the terms of which the defendant had not agreed to and the existence of which the plaintiffs had not pleaded.[3] We disagree and, accordingly, we affirm the judgment of the trial court.

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Although Bluefin, a commercial mortgage lender, and PFH, a commercial mortgage broker, each played different roles in the events of this case, for convenience we refer to them collectively as the plaintiffs and individually by name where appropriate.

[3] The defendant frames the issues in this appeal as whether the trial court improperly: (1) determined that the defendant breached the revised agreement when there had been no " 'meeting of the minds' " as to the terms of that agreement; (2) rendered judgment for the plaintiffs based on the revised agreement when the plaintiffs had failed to plead or seek relief pursuant to that agreement; (3) rendered judgment for the plaintiffs on the defendant's counterclaim when there had been no " 'meeting of the minds' " on the terms of the revised agreement; (4) rendered judgment for the plaintiffs where there had been a mutual mistake about the collateral to be provided under the original agreement; and (5) integrated into the original agreement certain documents that were created after that agreement had been entered into, thereby creating a revised agreement to which the defendant had not agreed. In essence, however, the defendant's claims on appeal are that: (1) the original agreement was invalid because of the mutual mistake of the parties regarding the defendant's ability to provide the collateral described in that agreement; and (2) once it was discovered that the original agreement was invalid, the parties had not agreed on the terms of a new or revised agreement, and, therefore, the trial court improperly relied on the existence of such a revised agreement, which the plaintiffs had not

The record reveals the following relevant facts and procedural history. In June, 2006, the defendant entered into a contract for the purchase of a parcel of distressed property located at 391 Deepwood Drive in Lebanon (Deepwood Drive property). A closing date for the sale of the Deepwood Drive property was set for June 16, 2006, and the defendant thereafter contacted the plaintiffs intending to obtain financing for the purchase. Following discussions between the parties, the plaintiffs sent the defendant a term sheet describing the terms of a proposed commercial loan agreement, which the defendant agreed to on June 13, 2006 (original agreement). The original agreement provided in relevant part that the plaintiffs would loan the defendant $150,000 for the purchase of the Deepwood Drive property, which would be secured by a first mortgage on that property and a first mortgage on three separately approved and buildable lots owned by the defendant, known as lots nos. 2, 3 and 4, located at 72 Baltic Street in Norwich (Baltic Street property).[4] In addition, the original agreement required the defendant to pay the plaintiffs $2000 prior to the closing, to be applied toward the origination and appraisal fees. The original agreement expressly provided that the $2000 was nonrefundable, and that it would be returned to the defendant only in the event that the closing did not occur through the fault of the plaintiffs. The defendant sent a check in the amount of $2000 to the plaintiffs.

Thereafter, the defendant's attorney conducted a title search of the properties described in the original

pleaded, in reaching its decision on both the plaintiffs' claim and the defendant's counterclaim. Accordingly, we review the defendant's claims on that basis.

[4] The defendant previously had purchased the Baltic Street property and, prior to entering into the original agreement with the plaintiffs, had taken steps to subdivide it into four separate lots, consisting of lot no.1, on which a house was located, and lots nos. 2, 3 and 4, none of which had been developed.

agreement, and discovered that, unbeknownst to either party, the Baltic Street property had not been subdivided properly into four buildable lots, and, as of June 14, 2006, still was on record as a single parcel. In addition, the title search revealed that the entire Baltic Street property already was subject to a first mortgage in favor of Ameriquest Mortgage Company. Realizing that the defendant could not provide the collateral described in the original agreement,[5] the parties subsequently discussed the possibility of modifying the terms of that agreement by adding a third property, which was located at 106 Summit Street in Norwich (Summit Street property), as additional collateral to secure the loan. Although the plaintiffs remained willing to proceed with the closing based on the terms of the original agreement, the trial court found that those discussions resulted in a revised agreement that the defendant could provide, as an alternative to the security terms of the original agreement, a first mortgage on the Deepwood Drive property, a second mortgage on the entire Baltic Street property, including lot no.1, and a second mortgage on the Summit Street property as collateral for the loan.[6] The remaining terms of the original agreement were not discussed, and remained unchanged.

The June 16, 2006 closing date on the Deepwood Drive property subsequently arrived, but the defendant failed to attend the closing, and the parties negotiated a new closing date scheduled for June 22, 2006. Thereafter, the plaintiffs prepared all of the required closing documents in accordance with the terms of the revised agreement on the collateral to be provided, although

[5] Although the defendant contemplated the possibility of remedying these deficiencies prior to the scheduled closing, she subsequently determined that it would not be possible to do so in such a short time period.

[6] The defendant vigorously disputes this factual finding on appeal, claiming that she never agreed to the terms of the revised agreement. In light of our conclusions herein, however, we need not address this particular factual dispute.

they again made it known to the defendant that they also were willing, in the event that the defendant was able to cure the deficiencies with the originally agreed upon collateral, to proceed with the closing based on the terms of the original agreement. Although the plaintiffs were prepared to close on the scheduled June 22 closing date, the closing did not occur because the defendant again failed to appear when that date arrived. The defendant subsequently obtained financing from a different lender, and closed on the sale of the Deepwood Drive property sometime thereafter.

The plaintiffs later filed this action, seeking damages for the defendant's breach of the original agreement. The defendant filed a counterclaim, asserting that the closing did not occur because the plaintiffs "would not agree to lend based on title issues with the properties considered as potential collateral," and sought to recover the $2000 that she had paid to the plaintiffs in advance of the scheduled closing. The case was tried to the court, which concluded that: "Bluefin was ready, willing and able to perform its part of the agreement with the defendant in accordance with the . . . terms of [the original agreement], or with the alternative proposal agreed upon by the parties. The defendant breached her contract with Bluefin when she refused to consummate the loan agreement and has refused to pay the fees as provided in the agreement." The trial court awarded the plaintiffs damages in the amount of $10,704.87,[7] and also rendered judgment in favor of the plaintiffs on the defendant's counterclaim. This appeal followed.

On appeal, the defendant claims that the trial court improperly rendered judgment in favor of the plaintiffs,

[7] Specifically, the trial court awarded Bluefin damages in the amount of $11,089.01 for the origination fee and legal fees incurred in preparing for the closing, less the $2000 that the defendant had already paid on June 13, 2006, for a total of $9089.01. The court also awarded PFH $1615.86 for the placement fee.

both on their breach of contract claim and on her counterclaim, because: (1) the original agreement did not constitute a valid contract on account of the mutual mistake of the parties regarding the defendant's ability to provide the collateral described in that agreement; and (2) the trial court improperly based its decision on the revised agreement, the terms of which the defendant had not agreed to, and the existence of which the plaintiffs had not pleaded.

I

With regard to her first claim, the defendant contends that, although the parties entered into the original agreement in good faith, both believing that the defendant could and would provide the plaintiffs with the collateral described in that agreement, it subsequently was discovered that the parties were mistaken as to the defendant's ability to do so. Relying primarily on 1 Restatement (Second), Contracts § 151, illustration 3, pp. 383–85 (1981), the defendant contended at oral argument before this court that this mistake was made by, and properly should be attributed to, both parties. Accordingly, the defendant further contends that, pursuant to *Aquarion Water Co. of Connecticut* v. *Beck Law Products & Forms, LLC*, 98 Conn. App. 234, 239, 907 A.2d 1274 (2006), and 1 Restatement (Second), supra, §§ 151 through 158, pp. 383–422, the original agreement should be rescinded in its entirety because the parties were mutually mistaken about the defendant's ability to comply with a material term of that agreement. We decline to review the defendant's claim.

"A mutual mistake is one that is common to both parties and effects a result that neither intended. . . . Whether there has been such mistake is a question of fact." (Internal quotation marks omitted.) *McBurney* v. *Cirillo*, 276 Conn. 782, 815, 889 A.2d 759 (2006). When presenting a claim based on a question of fact, it is

the appellant's burden to provide this court with an adequate record for review. See, e.g., Practice Book § 61-10; *State* v. *Bonner*, 290 Conn. 468, 493, 964 A.2d 73 (2009). In the present case, the trial court did not address the issue of mutual mistake in its memorandum of decision, much less make any specific findings of fact regarding the validity of that defense. It is axiomatic that "[i]t is the function of the trial court, not this court, to find facts"; (internal quotation marks omitted) *Miller* v. *Westport*, 268 Conn. 207, 221, 842 A.2d 558 (2004); and we are unable on appeal to make the factual determinations necessary to resolve the defendant's claim. Accordingly, because the defendant did not seek an articulation of the trial court's decision with respect to the issue of mutual mistake[8] and, therefore, has failed to provide us with an adequate record for review, we decline to review the defendant's first claim on appeal. See id.

II

The defendant next claims that the trial court improperly based its decision on the revised agreement that she had not agreed to, and that the plaintiffs had not pleaded. We also decline to address this claim because, in light of our resolution of the defendant's first claim, even if we were to agree that the parties had not agreed to the terms of the revised agreement, the defendant still would be liable for her failure to provide the collateral described in the original agreement. More specifically, other than her claim of mutual mistake, which we have declined to review, the defendant has not advanced, and we cannot discern, any reason why the original agreement, which the trial court relied upon in its decision for all purposes other than the determination of

[8] We note that the defendant requested an articulation of the trial court's decision; see footnote 9 of this opinion; but also that her request did not seek, and the trial court did not render, an articulation on the specific issue of mutual mistake.

which collateral the defendant was required to provide,[9] was invalid or unenforceable.[10] Even if we were to assume that the defendant never accepted the terms of the revised agreement with respect to collateral, the inescapable consequence of that conclusion is that the terms of the original agreement, which thus would not have been modified by any subsequent agreement, remained in effect at the time of the scheduled closing.[11] The trial court found, and the defendant concedes, that she could not and did not provide the collateral described in the original agreement when she was required to do so. The defendant also does not dispute the trial court's finding that the plaintiffs were ready, willing and able to fulfill their end of the bargain, in accordance with the terms of the original agreement, when the scheduled closing date arrived. Even if the defendant succeeded on her claim that there was no subsequent " 'meeting of the minds' " on the revised agreement with respect to collateral, therefore, she still would be liable in the same amount[12] for her breach of

---

[9] The defendant sought an articulation of the trial court's judgment with respect to, inter alia, which agreement the trial court had based its decision on. In response to that request, the trial court expressly stated: "The judgment was based on the original agreement [as evidenced by the June 13 term sheet], *and* the revision of that agreement with respect to the security to be given by the defendant for the loan." (Emphasis added.)

[10] The defendant, for example, has not advanced a claim that, due to her inability to provide the collateral described in the original agreement, her duty to perform was discharged based on a theory of impossibility of performance pursuant to 2 Restatement (Second), Contracts §§ 261 through 272, pp. 313–60 (1981), which requires a different legal analysis than the claim presented here.

[11] Indeed, there is no suggestion that the plaintiffs somehow released the defendant from her obligations under the original agreement simply by discussing the possibility of reaching an accommodation with the defendant on the collateral issue. To the contrary, the plaintiffs maintained throughout the proceedings that they remained ready, willing and able to proceed with the closing under the terms of the original agreement, but that, in the event that the defendant could not satisfy her obligations under that agreement, the plaintiffs also were willing to proceed under the revised agreement.

[12] It is undisputed that, other than the collateral to be provided by the defendant, the remaining terms of the original agreement that served as the

the original agreement caused by her failure to provide the collateral described in that agreement. Accordingly, because the defendant cannot obtain any practical relief from a successful resolution of her second claim, we decline to address that claim as functionally moot. See, e.g., *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates*, 219 Conn. 772, 780, 595 A.2d 334 (1991) (declining to review first claim when resolution of that claim would not affect outcome in light of court's resolution of second claim).

The judgment is affirmed.

In this opinion the other justices concurred.

basis for the trial court's calculation of damages, including the origination fee, placement fee, interest rate and legal fees incurred in preparation of the closing, remained unchanged by the subsequent negotiations between the parties. Thus, the amount of the plaintiffs' damages would have remained the same regardless of which agreement provided the basis for the decision of the trial court.