STATE OF CONNECTICUT *v.* HUBERT J. THOMPSON
(AC 30423)

Gruendel, Alvord and Borden, Js.

Argued September 10—officially released December 1, 2009

*David J. Reich*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Warren Maxwell*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Hubert J. Thompson, appeals from the judgment of conviction, rendered after a court trial, of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), sexual assault in the first degree in violation of General Statutes § 53a-70 (a) and attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2)

and 53a-70 (a). On appeal, the defendant claims that (1) he was denied effective assistance of counsel as a result of the trial court's failure to inquire into an alleged conflict of interest of his defense counsel, (2) he was denied his due process rights as a result of the court's alleged failure to canvass him adequately regarding his waiver of the right to a jury trial and (3) his conviction of kidnapping in the first degree should be reversed in light of our Supreme Court's change in its interpretation of § 53a-92. We affirm the defendant's conviction of sexual assault in the first degree and attempt to commit sexual assault in the first degree. We reverse the defendant's conviction of kidnapping in the first degree and remand the case for a new trial on that charge.

The court reasonably could have found the following facts. In September, 1994, the victim[1] lived with her then boyfriend in an apartment in Hartford and was addicted to drugs. At approximately 11 p.m. on September 23, 1994, the victim left her apartment and drove her boyfriend's leased car to South Marshall Street, where she had purchased drugs in the past and hoped to do so again on that particular occasion. In her experience, there was a certain etiquette in purchasing drugs. Specifically, the victim would stop her car, wait for the dealer to approach the driver's side, tell the dealer what she wanted and quickly complete the exchange. Generally, such transactions lasted only a matter of seconds.

As the victim came to a complete stop at a stop sign on South Marshall Street on the evening of September 23, 1994, the defendant approached and entered the car from the passenger side without invitation. The victim recognized the defendant as the drug dealer from whom she had purchased drugs approximately one week earlier. In that transaction, the victim purchased drugs

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

from the defendant on credit and had yet to repay him when he entered the car. When the defendant entered the car, the victim told him that she had his money for the drugs, but he was angry, refused to accept the money and, instead, said something to the effect of: "I told you not to play with me." The defendant next slapped the victim and instructed: "Bitch, pull over." After the victim complied, the defendant removed the keys from the ignition and told the victim to get out of the car. Upon exiting the car, the victim attempted to escape, but the defendant grabbed her and dragged her to the side of a nearby building, at which point someone yelled, "man, you shouldn't do that."[2] The defendant ordered the victim to remove her clothes and she complied after being punched several times in the face because "[she] was terrified [and] didn't know what [the defendant] was going to do. [She] thought [she] was going to get really hurt . . . ." There, behind the building, the defendant sexually assaulted the victim. The entire episode lasted fifteen to twenty minutes.[3]

Following that episode, the defendant led the victim back to the car, forced her into the passenger seat and drove along several streets. There was no conversation during that ride. The victim "was terrified [and] didn't know where [the defendant] was taking [her] and what he was going to do next." As the car came to a stop at a traffic signal, approximately one block from the victim's apartment, the victim recognized that this was her chance to escape. While the car was still stopped, she got out, ran to her apartment complex and screamed

[2] The victim testified that the building was located on Case Street. A police officer testified that the building was located somewhere on South Marshall Street.

[3] The victim testified that this episode lasted for "about fifteen, twenty minutes . . . ." From the record, it is unclear as to whether only the sexual assault lasted for that time or whether the restraint, beginning when the defendant entered the victim's car, through the sexual assault lasted for that time.

for help until her boyfriend let her in at the front gate. Upon the victim's return, her boyfriend notified the police, who responded soon thereafter. The victim also went to a local hospital, where she underwent examination. The defendant was later apprehended, and a court trial followed, at the conclusion of which the court found the defendant guilty of kidnapping in the first degree, sexual assault in the first degree and attempt to commit sexual assault in the first degree. From that judgment, the defendant appeals.

I

The defendant claims that the court violated his right to the effective assistance of counsel as guaranteed by the sixth amendment to the United States constitution by failing sua sponte to inquire into an alleged conflict of interest between him and his trial counsel, M. Donald Cardwell, when the court knew or should have known about the conflict. We disagree.

The following additional facts are relevant to the defendant's claim. Cardwell had been convicted of a federal criminal charge for which he awaited sentencing. On October 1, 1998, with Cardwell's advice, the defendant informed the court that he wanted to forgo his right to a jury trial and be tried by the court. When canvassed by the court, the defendant indicated that he was aware of Cardwell's conviction and pending sentence and that Cardwell had explained to him such matters fully. The defendant further responded that he wanted Cardwell to continue to represent him and that he did not have any questions for the court or Cardwell. Subsequently, Cardwell affirmatively represented to the court that there was no conflict of interest between himself and the defendant and that his conviction would not impair his ability to represent the defendant adequately.

Before reviewing the defendant's claim, we note that our review is limited to the actions of the court, not the actions of defense counsel. Our Supreme Court has observed that "[a]lmost without exception, we have required that a claim of ineffective assistance of counsel . . . be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . On the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the trial court, rather than by those of his counsel." (Internal quotation marks omitted.) *State* v. *Drakeford*, 261 Conn. 420, 428, 802 A.2d 844 (2002). Moreover, we have addressed such claims "only where the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development." *State* v. *Crespo*, 246 Conn. 665, 688, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). Accordingly, we review the defendant's claim as a question of law, and, therefore, our review is plenary.

"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to [the] effective assistance of counsel. . . . Where a constitutional right to counsel exists . . . there is a correlative right to representation that is free from conflicts of interest. . . . There are two circumstances under which a trial court has a duty to inquire with respect to a conflict of interest: (1) when there has been a timely conflict objection at trial . . . or (2) when the trial court knows or reasonably should know that a

particular conflict exists . . . ."[4] (Citation omitted; internal quotation marks omitted.) *State* v. *Cator*, 256 Conn. 785, 793–94, 781 A.2d 285 (2001). Before being charged with a duty to inquire, the court must have before it evidence that a defendant's sixth amendment right to effective assistance of counsel is in jeopardy. *State* v. *Crespo*, supra, 246 Conn. 697. A court's failure to inquire when it has an affirmative duty to do so constitutes the basis for reversal of a defendant's conviction. Id., 686.

No timely conflict objection was made in this case. Therefore, when determining whether the court had a duty to inquire, we must determine whether the court knew or reasonably should have known that a conflict existed. Because the defendant did not raise any objection to Cardwell's representation at trial, he seeks to prevail on his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). *Golding* holds that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of

---

[4] In the absence of an affirmative duty by the court to inquire, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance" to obtain reversal of his conviction. (Internal quotation marks omitted.) *State* v. *Cator*, supra, 256 Conn. 794, citing *Cuyler* v. *Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). "In a case of a claimed [actual] conflict of interest . . . in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Internal quotation marks omitted.) *Phillips* v. *Warden*, 220 Conn. 112, 133, 595 A.2d 1356 (1991).

the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id. For the reasons we will set forth, we conclude that the defendant's claim fails under the third prong of *Golding*.

Our Supreme Court has explained that a conflict of interest is "that which impedes [counsel's] paramount duty of loyalty to his client [such that] an attorney may be considered to be laboring under an impaired duty of loyalty, and thereby be subject to conflicting interests, because of interests or factors personal to him that are inconsistent, diverse or otherwise discordant with [the interests] of his client . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Crespo*, supra, 246 Conn. 689–90. Moreover, counsel's loyalty is "impaired when . . . [he] cannot consider, recommend or carry out an appropriate course of action for the client because of . . . [his] other responsibilities or interests . . . ." *Phillips* v. *Warden*, 220 Conn. 112, 138, 595 A.2d 1356 (1991). "While the right to conflict-free representation typically is implicated in cases involving representation of criminal codefendants by a single attorney . . . it is equally applicable in other cases where a conflict of interest may impair an attorney's ability to represent his client effectively." (Citations omitted; internal quotation marks omitted.) *Adorno* v. *Commissioner of Correction*, 66 Conn. App. 179, 195, 783 A.2d 1202, cert. denied, 258 Conn. 943, 786 A.2d 428 (2001). Thus, "[t]he key here should be the presence of a specific concern that would divide counsel's loyalties." (Internal quotation marks omitted.) *State* v. *Barnes*, 99 Conn. App. 203, 217, 913 A.2d 460, cert. denied, 281 Conn. 921, 918 A.2d 272 (2007).

The defendant first contends that there existed an actual conflict of interest on the part of Cardwell of which the court should have been aware and that it

should have addressed. To support his claim, the defendant relies on *Phillips*. There, our Supreme Court found that defense counsel, a convicted murderer, had an actual conflict of interest "dictated solely by [counsel's] own personal situation," which adversely affected his performance. *Phillips* v. *Warden*, supra, 220 Conn. 147. Specifically, as a result of counsel's murder conviction, counsel's loyalty was impaired by virtue of his having to choose between inquiring of the venirepersons whether they knew about his conviction or forgoing such inquiry. Here, the defendant argues that Cardwell's duty of loyalty was similarly impaired when Cardwell allegedly was forced to decide "whether to allow his client to face the jury while hampered by an attorney with a federal conviction or to waive his right to a jury." Essentially, the defendant contends that Cardwell's duty of loyalty was impaired because his federal criminal conviction prevented him from pursuing a jury trial.

The defendant alleges that the actual conflict arose when Cardwell decided to try the case knowing that he had a federal criminal conviction. Contrary to the defendant's assertion, *Phillips* emphasized that it did "not hold that whenever a lawyer who has been convicted of a felony represents a criminal defendant there is a conflict of interest in the constitutional sense." Id., 142–43. Rather, *Phillips* held that there existed an actual conflict because of the "unique facts" of that case. Id., 139. Of those "unique facts," the court in *Phillips* noted: "Surely no other criminal defendant in the history of Connecticut jurisprudence—indeed, in the history of American jurisprudence—has ever had to face a jury in a trial for serious and violent criminal offenses, while represented by a convicted murderer, whose conviction was likely to have been known by the jurors, in the judicial district where both the murder and conviction took place, where both the murder and its ensuing legal aftermath had been widely reported

in the press, and when the murderer was literally on his own way to prison." Id., 140–41.

In the present case, the record reveals only that Cardwell was convicted of a federal crime and that he advised his client to waive his right to a jury trial. Significantly, the record does not reveal the specific federal crime with which Cardwell was convicted, the federal trial court in which he was convicted, the publicity his conviction may have received or anything else about it. In addition, nothing in the record indicates that the advice Cardwell provided to his client was dictated in any way by interests or factors personal to him or that he would not have advised the defendant in the same way had he not been convicted of a federal crime. Simply put, the conflict that allegedly existed is theoretical, and the circumstances of such are insufficient to alert a reasonable trial court that the defendant's sixth amendment right to effective assistance of counsel was in jeopardy. Accordingly, we conclude that there was no actual conflict obligating the court to inquire, and, therefore, the defendant's claim fails.

Alternatively, the defendant claims that the court was at least alerted to a potential conflict once it had learned of Cardwell's federal criminal conviction and that Cardwell had advised the defendant to waive the right to a jury trial. Although a federal criminal conviction of counsel conceivably can create a potential conflict of interest, it did not do so under the circumstance of this case. As previously stated, "a conflict of interest impedes a counsel's duty of loyalty to his client, subjecting counsel to divided loyalties." *State* v. *Barnes*, supra, 99 Conn. App. 219. Here, Cardwell awaited sentencing for an unidentified federal crime in an unidentified federal trial court. Cardwell did not indicate that any of his interests were different or otherwise discordant with the interests of the defendant, that his duty of loyalty to the defendant was divided or that he would

be unable to represent the defendant effectively. See id. Rather, Cardwell affirmatively represented to the court that there was no potential conflict.[5] Our Supreme Court has observed that when discharging the duty to inquire, the trial court "must be able, and be freely permitted, to rely upon [defense] counsel's representation that the possibility of such a conflict does or does not exist. . . . The reliance in such an instance is upon the solemn representation of a fact made by [the] attorney as an officer of the court. . . . The course thereafter followed by the court in its inquiry depends upon the circumstances of the particular case." (Citations omitted; internal quotation marks omitted.) *State* v. *Drakeford*, supra, 261 Conn. 427. Absent any reason to the contrary, the court was entitled to rely on Cardwell's representation that there existed no conflict, and it had no obligation to conduct any further inquiry into the subject. Accordingly, we conclude that there was no potential conflict of interest obligating the court to inquire, and, therefore, the defendant's claim fails.

II

The defendant next claims that the court failed to canvass him adequately concerning the waiver of his right to a jury trial. Specifically, the defendant alleges

---

[5] Cardwell addressed the court as follows: "If I, in examining my own conscience and the workings of my own mind, believed that there was any reason why I could not effectively represent [the defendant], I would have told him so and would not have chosen to go forward. I think the record should be clear, also, that I am continuing to practice in all of the United States federal courts, as well as in the state courts, and while, of course, my own situation is such that I have to give that time, frankly, it has not in any [way] affected my ability to adequately represent clients to the best of my ability, and I think the record should also be clear that not only did I inform [the defendant] of the facts of my situation, but I went over the case in real detail with him so that he would have a basis to form an assessment as to whether he wished me to continue to represent him. So, I believe that he has been fully informed, and based on our relationship, which goes back to 1994, I am satisfied that his decision to keep me as his lawyer is one that he is making with knowledge and voluntary."

that his waiver of the right to a jury trial cannot have been adequate if the record does not reflect his knowledge of the conflict. The defendant concedes that this claim was not raised at trial and, thus, was not preserved for our review. He seeks to prevail under *State* v. *Golding*, supra, 213 Conn. 239–40. We review the defendant's claim because the record is adequate and the alleged violation is of constitutional magnitude, as it involves his constitutional right to a jury trial.

We begin our analysis by setting forth the applicable standard of review. Our Supreme Court has stated that "[t]he right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such right is that it must be knowing and intelligent, as well as voluntary. . . . Relying on the standard articulated in *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the Practice Book. . . . Our task, therefore, is to determine whether the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to a jury trial. . . . Our inquiry is dependent upon the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the accused. . . . In examining the record, moreover, we will indulge

every reasonable presumption against waiver of fundamental constitutional rights and . . . [will] not presume acquiescence in the loss of fundamental rights. . . . In addition, a waiver of a fundamental constitutional right is not to be presumed from a silent record." (Citations omitted; internal quotation marks omitted.) *State* v. *Gore*, 288 Conn. 770, 775–77, 955 A.2d 1 (2008).

When a defendant indicates that he wants to waive his right to a jury trial without signing a waiver, "the trial court should engage in a brief canvass of the defendant in order to ascertain that his or her personal waiver of the fundamental right to a jury trial is made knowingly, intelligently and voluntarily. This canvass need not be overly detailed or extensive, but it should be sufficient to allow the trial court to obtain assurance that the defendant: (1) understands that he or she personally has the right to a jury trial; (2) understands that he or she possesses the authority to give up or waive the right to a jury trial; and (3) voluntarily has chosen to waive the right to a jury trial and to elect a court trial." Id., 788–89.

The defendant concedes that the court's canvass demonstrates that he understood that he had the right to a jury trial, that he possessed the authority to waive that right and that his decision to waive that right was voluntary.[6] The defendant, nevertheless, contends that the court's canvass was inadequate because the court did not canvass him with regard to his understanding that Cardwell allegedly had a conflict of interest. According to the defendant, it follows that in the absence of such canvass, he could not have knowingly, intelligently and voluntarily waived his right to a jury trial. The defendant's line of reasoning, however, presumes that such conflict existed. For the reasons set

[6] In his reply brief, the defendant acknowledges that "[h]ad there been no actual or potential conflict of interest, the court's canvass would have been adequate."

forth in part I of this opinion, we conclude that there was no conflict of interest. Accordingly, we conclude that the court's canvass of the defendant was adequate, and, as such, he was not clearly deprived of a constitutional right.

## III

Finally, the defendant claims that his conviction of kidnapping in the first degree should be reversed in light of our Supreme Court's recent change in its interpretation of § 53a-92. See *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008) (en banc); *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008), overruled in part by *State* v. *DeJesus*, 288 Conn. 418, 437, 953 A.2d 45 (2008) (en banc), and superseded in part by *State* v. *Sanseverino*, 291 Conn. 574, 969 A.2d 710 (2009) (en banc); *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008). We agree.

We begin by noting the following appellate procedural history, which is pertinent to our consideration. After the defendant was tried, convicted and sentenced, in November, 1998, he commenced his appeal before our Supreme Court in March, 2008, which, pursuant to Practice Book § 65-1, transferred the appeal to this court.[7] Thereafter, the decision in *Salamon* was released on July 1, 2008. Although the defendant conceded that he did not preserve the issue at trial, *Salamon* may be applied to the present case because of the general rule that "judgments that are not by their terms limited to prospective application are presumed to apply retroactively . . . to cases that are pending . . . ." (Citation omitted.) *Marone* v. *Waterbury*, 244 Conn. 1, 10–11, 707 A.2d 725 (1998). The defendant

[7] The defendant failed to file a timely appeal from the judgment of conviction. In 2007, the defendant filed a habeas petition, which he withdrew as a result of an agreement pursuant to which his right to appeal from the judgment of conviction was restored.

argues that his conviction of kidnapping in the first degree should be reversed because of the substantive change in law. The state contends that application of this new interpretation of law is inapplicable to the facts and circumstances of the present case, and, even if this court finds otherwise, any error was harmless. As such, the matter before us presents a question of law, and, therefore, our review is plenary. See, e.g., *Hayes Family Ltd. Partnership* v. *Planning & Zoning Commission*, 98 Conn. App. 213, 223, 907 A.2d 1235 (2006) (applicability of statute to given set of facts and circumstances involves question of law requiring plenary review), cert. denied, 281 Conn. 904, 916 A.2d 44 (2007).

Our Supreme Court recently reviewed the development of its decisional law concerning § 53a-92. It stated: "[R]esolution of the defendant's final claim is governed by our recent decisions in *State* v. *Salamon*, supra, 287 Conn. 509, *State* v. *Sanseverino*, supra, 287 Conn. 608, and *State* v. *DeJesus*, supra, 288 Conn. 418. Accordingly, before addressing the defendant's claim, we review briefly our decisions in these cases. In *Salamon*, 'we reconsidered our long-standing interpretation of our kidnapping statutes, General Statutes §§ 53a-91 through 53a-94a.' *State* v. *Sanseverino*, supra, 620. The defendant had assaulted the victim at a train station late at night, and ultimately was charged with kidnapping in the second degree in violation of [General Statutes] § 53a-94, unlawful restraint in the first degree, and risk of injury to a child. *State* v. *Salamon*, supra, 515. 'At trial, the defendant requested a jury instruction that, if the jury found that the restraint had been incidental to the assault, then the jury must acquit the defendant of the charge of kidnapping. [Id., 516]. The trial court declined to give that instruction. Id.' *State* v. *Sanseverino*, supra, 621.

" 'We [thus] reexamined our long-standing interpretation of the kidnapping statutes to encompass even restraints that merely were incidental to and necessary for the commission of another substantive offense, such as robbery or sexual assault. [*State* v. *Salamon*, supra, 287 Conn. 522–28] . . . .' *State* v. *Sanseverino*, supra, 287 Conn. 621. We ultimately concluded that '[o]ur legislature . . . intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime.' *State* v. *Salamon*, supra, 542.

"We explained in *Salamon* that 'a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that had independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury. For purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that

movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.' Id., 547–48. 'Applying this standard to the facts in *Salamon*, we concluded that, although the defendant had not been charged with assault, the judgment of conviction of kidnapping in the second degree had to be reversed and the case remanded for a new trial because the defendant was entitled to a jury instruction explaining that a kidnapping conviction could not lie if the restraint was merely incidental to the assault. Id., 550.'[8] *State* v. *Sanseverino*, supra, 287 Conn. 624.

"In *Sanseverino*, we relied on our opinion in *Salamon* to reverse the defendant's conviction of kidnapping in the first degree, reasoning that 'although the question of whether kidnapping may stand as a separate offense is one for the jury . . . under the facts of the present case, no reasonable jury could have found the defendant

---

[8] In *Salamon*, the court explained that on the basis of the facts before it, "a juror reasonably could find that the defendant's restraint of the victim was not merely incidental to his assault of the victim. The victim testified that the defendant, after accosting her, forcibly held her down for five minutes or more. Although the defendant punched the victim once and shoved his fingers into her mouth, that conduct was very brief in contrast to the extended duration of the defendant's restraint of the victim. In light of the evidence, moreover, a juror reasonably could find that the defendant pulled the victim to the ground primarily for the purpose of restraining her, and that he struck her and put his fingers in her mouth in an effort to subdue her and to prevent her from screaming for help so that she could not escape. In such circumstances, we cannot say that the defendant's restraint of the victim necessarily was incidental to his assault of the victim. Whether the defendant's conduct constituted a kidnapping, therefore, is a factual question for determination by a properly instructed jury." *State* v. *Salamon*, supra, 287 Conn. 549–50.

guilty of kidnapping in the first degree on the basis of the evidence that the state proffered at trial.' . . . Id. We explained that '[i]n the present case, the evidence clearly establishes that the defendant restrained [the victim] solely for the purpose of sexually assaulting her. Although we carefully scrutinized the record, transcript, exhibits and briefs, we have found no evidence that the defendant restrained [the victim] to any greater degree than *necessary* to commit the sexual assault.' . . . Id., 625." (Emphasis in original.) *State* v. *Hampton*, 293 Conn. 435, 459–61, 978 A.2d 1089 (2009). Our Supreme Court further reasoned in *Sanseverino*: "[The victim] walked into the back room of the bakery to get an apron. The restraint occurred thereafter when the defendant grabbed [the victim] from behind and pushed her against the wall, pinning her arms over her head with his arm and pressing his body against hers to keep her from moving. These actions were clearly undertaken solely for the purpose of allowing the defendant to initiate, and to keep [the victim] from moving away from, his sexual advances. None of the restraint that the defendant applied to [the victim] was for the purpose of preventing her from summoning assistance nor did it significantly increase the risk of harm outside of that created by the assault itself." *State* v. *Sanseverino*, supra, 287 Conn. 625. To that end, the court in *Sanseverino* reversed the defendant's conviction of kidnapping in the first degree and remanded the case to the trial court with direction to render judgment of acquittal. Id., 641.

Relying on *Salamon*, in *DeJesus*, the court also reversed the defendant's kidnapping conviction. *State* v. *DeJesus*, supra, 288 Conn. 438–39. There, the court found that because the jury was not instructed in accordance with *Salamon* concerning the crime of kidnapping, "[t]he defendant therefore could have been

convicted on the basis of conduct which, under *Sala-mon*, does not violate the kidnapping statute."[9] Id., 438. After reversing the defendant's kidnapping conviction, *DeJesus* next "considered the appropriate remedy for the instructional impropriety identified in *Salamon* and *Sanseverino*, and concluded that in such situations, 'the appropriate remedy . . . is to reverse the defendant's kidnapping conviction and to remand the case to the trial court for a new trial.' Accordingly, [*DeJesus*] recognized the impropriety in our procedural conclusion in *Sanseverino*, and insofar as 'the proper remedy in that case should have been a new trial,' we overruled *Sanseverino*. Id., 437." *State* v. *Hampton*, supra, 293 Conn. 461.

Most recently, in *Hampton*, our Supreme Court determined that the trial court's improper jury instruction concerning the defendant's kidnapping charge "was harmless because it [was] clear beyond a reasonable doubt that the impropriety did not contribute to the verdict." Id., 463. Specifically, in *Hampton*, the court noted that the record was without evidence "that could rationally lead to a contrary finding by the jury as to whether the defendant's restraint of the victim had been inherent in, or merely incidental to, the additionally alleged crimes. The state presented overwhelming evidence that the defendant and [a male friend] had kidnapped the victim and had driven around Hartford and East Hartford with her for well over three hours before the defendant's alleged commission of any other crimes

---

[9] In *DeJesus*, the defendant sexually assaulted the victim on multiple occasions. *State* v. *DeJesus*, supra, 288 Conn. 422. In each instance, the defendant, a customer service manager at a supermarket, instructed the victim, an employee at the supermarket, to wait for him in a room. Id., 422–23. When the defendant later entered the room, he sexually assaulted the victim. Id. In one instance, the defendant forced the victim to perform oral sex on him. Id., 422–24. In another instance, the defendant removed the victim's clothes and forcibly engaged in penile-vaginal intercourse. Id., 423–24.

commenced." Id. In reaching its conclusion, the court found significant that "between the time when [the friend] and the defendant picked the victim up in East Hartford [promising to drive her home], and when [the friend] parked the car behind [a] gas station in Hartford and the sexual assault and the shooting of the victim occurred, the victim had been: (1) driven to a restaurant in downtown Hartford; (2) angrily questioned in the car about the whereabouts of her brother; (3) driven to her grandmother's house in Hartford; (4) driven to the home of [the friend's] mother in Hartford; and (5) driven to a nearby apartment complex." Id., 463–64. The court in *Hampton*, therefore, concluded that the record clearly showed that the defendant intended to "prevent the victim's liberation for a longer period of time or to a greater degree than that necessary to commit the subsequent crimes." Id., 464.

In the present case, it is first important to note that because the defendant was charged with kidnapping pursuant to § 53a-92 (a) (2), we cannot consider his conduct following the sexual assault. Section 53a-92 (a) (2) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ." At oral argument, the state conceded that it introduced no evidence at trial to suggest that the defendant intended to "inflict physical injury upon [the victim] or violate or abuse [her] sexually" subsequent to the sexual assault. As a result, even though the defendant forced the victim back into the car after the sexual assault occurred and drove her around until she finally escaped, our analysis is limited to the defendant's conduct up to the completion of the sexual assault. This includes when the defendant entered the victim's car, instructed her to get out,

grabbed her as she attempted to get away and brought her to a nearby building to sexually assault her.

The state contends that a finding in accordance with *Salamon* is unnecessary because unlike *Salamon*, *Sanseverino* and *DeJesus*, the restraint of the victim in the present case was not contemporaneous with the sexual assault. Moreover, in contrast to those three cases, the state asserts that the defendant here forcibly moved the victim prior to the sexual assault. According to the state, for a *Salamon* finding[10] to have been applicable, the sexual assault must have occurred in the car and not at a nearby building.[11] Alternatively, the state contends that even if a *Salamon* finding is applicable, any error was harmless beyond a reasonable doubt. We disagree.

We emphasize that "[w]hether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case." (Internal quotation marks omitted.) *State* v. *Hampton*, supra, 293 Conn. 460. Accordingly, we conclude that when assessing the defendant's kidnapping charge, the court was required to have made a specific factual finding, if it determined that such a finding was justified by the evidence, that the defendant in this matter must have "intend[ed] to prevent the victim's liberation for a longer period of time or to a greater degree than that which [was] necessary to commit the other crime." *State* v. *Salamon*, supra, 287 Conn. 542. Although the state seeks to distinguish the present case from *Salamon*, *Sanseverino* and *DeJesus*, those cases were careful to "[reaffirm] our long-standing rule that no minimum period of restraint or degree of movement is

[10] A *Salamon* finding is one that, when reasonably supported by the evidence, the restraint was or was not merely incidental to some other, separate crime. See *State* v. *Salamon*, supra, 287 Conn. 549–50.

[11] The state raised this claim for the first time at oral argument.

necessary" for the crime of kidnapping. *State* v. *Sanseverino*, supra, 287 Conn. 623. Instead, "[t]he guiding principle is whether the [confinement or movement] was so much the part of another substantive crime that the substantive crime could not have been committed without such acts . . . ." (Internal quotation marks omitted.) *State* v. *Salamon*, supra, 546.

Limited by the temporal scope of our review, we cannot conclude that, as a matter of law, the defendant's restraint of the victim prior to the sexual assault was not merely incidental to the sexual assault itself. As the court in *Salamon* stated, "we cannot say that the defendant's restraint of the victim necessarily was incidental to his [sexual] assault of the victim." Id., 549–50. Put simply, we are unable to conclude that the evidence before us does not reasonably support a finding that the defendant's restraint of the victim was or was not so inextricably linked to the underlying crime itself. "It is axiomatic that [i]t is the function of the trial court, not [a reviewing] court, to find facts . . . ." (Citation omitted; internal quotation marks omitted.) *Bluefin Mortgage Fund, LLC* v. *Speer*, 291 Conn. 298, 305, 968 A.2d 362 (2009). Therefore, when justified by the evidence, as it is here, the factual determination mandated by *Salamon* must be made by the fact finder.

The state finally argues that even if a *Salamon* finding is warranted in the present case, failure to have made such a finding was harmless beyond a reasonable doubt. Contrary to the state's contention, it is not clear beyond a reasonable doubt that the verdict would have been the same in the absence of the alleged impropriety. The state's evidence was not so overwhelming that it would prevent a converse finding by the fact finder as to whether the defendant's restraint of the victim was inherent in, or merely incidental to, the sexual assault. Again, limited by the record, we conclude that the defendant could have been convicted on the basis of conduct,

which, under *Salamon,* does not violate the kidnapping statute. Accordingly, we reverse the defendant's conviction of kidnapping and remand this matter to the trial court for a new trial on the kidnapping charge.

The judgment is reversed only as to the conviction of kidnapping in the first degree and the case is remanded for a new trial. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.